[771 NYS2d 16]

164 Mᴜʟʙᴇʀʀʏ Sᴛʀᴇᴇᴛ Cᴏʀᴘ. et al., Respondents, v Cᴏʟᴜᴍʙɪᴀ Uɴɪᴠᴇʀsɪᴛʏ et al., Appellants.

Cʜᴇᴢ Jᴏsᴇᴘʜɪɴᴇ et al., Respondents, v Cᴏʟᴜᴍʙɪᴀ Uɴɪᴠᴇʀsɪᴛʏ et al., Appellants.

First Department, January 20, 2004

**APPEARANCES OF COUNSEL**

*Law Offices of Arnold N. Kriss (John C. Theodorellis* of counsel), for 164 Mulberry Street Corp. and others, respondents.

*Law Office of Thomas R., Moore* and *Law Office of Joseph M. Lichtenstein, P.C. (Elliot L. Lewis* of counsel), for Chez Josephine and others, respondents.

*Hughes Hubbard & Reed LLP* and *Toback, Hyman & Bernstein LLP (George A. Davidson, Arthur M. Toback* and *Derek J. T. Adler* of counsel), for Columbia University and others, appellants.

**OPINION OF THE COURT**

TOM, J.P.

We are asked to decide whether an academic research project that allegedly caused havoc at several New York City restaurants can form the basis of a lawsuit sounding in various tort causes of action against the academic institution and the researcher. Defendant Flynn, a Columbia Business School professor, designed and implemented a study which sought to elicit responses from restaurants in New York City to complaints from putative customers. As part of the project, professor Flynn sent letters to plaintiffs' restaurants, as well as many other New York City restaurants, including, inter alia, The Box Tree, Bordi Restaurant, Jezebel, The Herbal Kitchen, March, Bellini, La Grenouille, Sparks Steakhouse, Aquagrill, Aureole, Dawat, Le Bernadin and Capsuto Freres.

Plaintiffs in these two companion actions are the various restaurants and restaurateurs, along with their employees, who were the subjects of the professor's novel experiment, and who allege damages as a result. They asserted in these actions various negligence theories, but also sued for libel and libel per se arising from publication of defamatory information regarding the restaurants' hygienic safety.

In the Da Nico action, plaintiff 164 Mulberry Street Corp. is a restaurant known as Da Nico. Nicholas Criscitelli is the owner, president and manager of the restaurant. His mother Annette Sabatino helps manage it. They are individual plaintiffs. In the related Chez Josephine action, the lead restaurant plaintiff is Chez Josephine. Numerous other plaintiffs are noted in the caption and identified in the amended complaint as owners, managers and employees of New York City restaurants.

Turning first to the Da Nico complaint, plaintiffs allege that on or about August 14, 2001, defendant Flynn wrote a letter to Criscitelli in which he falsely accused the restaurant and Criscitelli of serving food to Flynn's wife that resulted in her suffering from food poisoning, with severe gastric consequences

that putatively ruined their anniversary. The letter's narrative departed somewhat from the narrative provided in the complaint in that Flynn, identifying himself as a manager at The Gap, stated that he and not his wife had suffered the mishap. The letter disclaimed any intention of the complainant of contacting regulatory agencies, and stated that the only intent was to convey to the owner what had occurred "in anticipation that you will respond accordingly." Apparently, the point of the study was to see how the various restaurants "respond[ed] accordingly." In any event, the complaint correctly focuses on the general falsity of the letter, that no food poisoning had occurred, and that, in fact, the letter was only a ruse that was part of an academic exercise wherein Flynn sought to elicit and evaluate plaintiffs' responses. Subsequently, Flynn admitted the falsehood in a September 4, 2001 letter of apology, in which he explained in cursory fashion that "the letter was fabricated to help collect data for a research study that I designed concerning vendor response to consumer complaints," and that none of the data thereby collected would be used for publication. The Dean of the Columbia Business School, professor Meyer Feldberg, also wrote a letter, dated September 5, 2001, apologizing for Flynn's conduct. He promised "to put into place procedures and guidelines for empirical research projects so that this will never happen again." This latter assurance has been converted by the pleadings into an admission that no such safeguards were in place. The complaint alleges that in the interim between the original letter and the apologies, though, Flynn had repeated the false statement regarding putative food poisoning in a telephone call to Criscitelli's mother, plaintiff Sabatino, during which he provided a false address. These individual plaintiffs allege that they were extremely upset by the claim of food poisoning, especially in view of the extraordinarily competitive nature of the restaurant business and the critical importance of reputation. They tried, unsuccessfully, to send flowers to the fictitious address. Subsequently, the New York City Department of Health conducted an investigation into the claim of food poisoning, during which restaurant employees were required to submit to stool analysis. Plaintiffs fault the institutional university defendants for allegedly failing to have and enforce appropriate guidelines and protocols regarding ethical and acceptable research practices by Flynn, thereby allowing this kind of research project to be conducted. The Da Nico complaint then sets forth 24 causes of action sounding generally in intentional

and negligent infliction of emotional distress by the various defendants against the various plaintiffs, libel and libel per se, and negligent misrepresentation. Plaintiffs also seek punitive damages.

In the Chez Josephine action, the amended complaint also alleged the need for the restaurant to maintain the highest credibility in the extremely competitive New York City dining market. The complaint alleged that on August 14, 2001, "defendants" wrote "letters" to plaintiffs that falsely accused them of having caused severe food poisoning. Parenthetically, the complaint fails to identify who suffered food poisoning, or how many letters were sent, and to whom exactly the letters were sent, except that they were sent to "plaintiffs." The complaint alleges that the letters were prepared and sent as part of a research project "to determine how the plaintiffs would react to such vicious and serious accusations," that the project was unethical and malicious, and that defendants "failed to have appropriate guidelines and protocols regarding acceptable and ethical research." Plaintiffs allege that as a result of the letters being sent, "plaintiffs suffered enormous emotional distress, guilt, fear of loss of individual jobs and business, and fear of loss of reputation." The complaint also, in conclusory terms, alleges the existence of purported damages that are not further itemized with respect to particular plaintiffs or with specific allegations regarding monetary losses. Individual plaintiffs Jean Claude Baker, the owner of Chez Josephine, and Frank Valenza, the owner of Restaurant 222, augment the pleadings with affidavits in which they claim that a charge of food poisoning could ruin their businesses, that they believed such a result would occur as a consequence of the original letter, and that Valenza claimed to have suffered heart problems and agitation as a result. Four causes of action in the Chez Josephine action, sounding in negligent and intentional infliction of emotional distress, libel and libel per se, are set forth. Punitive and compensatory damages are demanded.

Defendants moved to dismiss the complaints for failure to state a cause of action and on documentary evidence, and the Da Nico plaintiffs cross-moved for summary judgment. In addressing the dismissal motions, the motion court issued two separate decisions. After noting the essential generality of the causes of action, the court dismissed most of the claims. With regard to the negligent infliction of emotional distress claims by the individual plaintiffs in both actions, the court found no alle-

gation of a breach of duty owed directly to the various plaintiffs which either endangered, or caused them to fear for, their physical safety. Regarding intentional infliction of emotional distress, a personal claim of harm, all such claims in the Chez Josephine action against restaurant entities were dismissed as nonviable claims. The court found that the complaints failed to establish which individuals, other than Baker and Valenza, actually received the letters on behalf of the restaurants. Hence, the second cause of action for intentional infliction of emotional distress was dismissed except as to Baker and Valenza, who also claimed physical and psychological injuries as a result of Flynn's letter.

In the Da Nico action, the court dismissed the intentional infliction of emotional distress causes of action in the third, fourth, thirteenth and fourteenth causes of action as being duplicative of the libel claims in that action. As to those libel claims, the court in the Da Nico action found issues of fact whether there was a publication of the charge of food poisoning that went beyond the self-publication by Flynn in his letters to the restaurant staff. In this regard, the court noted that the Department of Health (DOH) allegedly conducted an investigation, and it remained factually unclear who had contacted the Department. However, insofar as the Da Nico complaint contained no actual allegation that the individual plaintiffs had suffered actual damage to their reputation, and no special damages were pleaded which are required for a cause of action for libel, the libel claims in the fifth, fifteenth and twentieth causes of action were dismissed. However, insofar as plaintiffs alleged that a false claim of food poisoning was made in a phone call and that a DOH investigation was triggered by the claim, and that the allegations sufficiently made out harm to plaintiffs in their business, the libel per se claims, which do not normally require that special damages be pleaded, were not dismissed. Claims for punitive damages arising out of libel per se were also dismissed insofar as they were being applied to private wrongs.

In the Chez Josephine action, certain libel claims were dismissed as to a number of plaintiffs insofar as their receipt of the letter was in dispute and no letters were submitted in the pleadings as to those plaintiffs that provided the libelous language to support this claim. Further, to the extent that any letters to restaurant employees failed to show how the letters damaged the reputations of the restaurants, the court found pleadings to be inadequate. As to all plaintiffs, though, the court

found that the complaint failed to adequately plead special damages, requiring dismissal of the libel claims in the third cause of action. Although the general claim of food poisoning might suffice for purposes of pleading libel per se in the fourth cause of action, there was only a single letter to each plaintiff, comprising only a single instance of publication as to each restaurant, on which basis the court applied the "single instance" rule, requiring that special damages be pleaded, and, on these pleadings, the libel per se claims were also dismissed.

The court sustained causes of action for negligent misrepresentation in the Da Nico complaint. The court, sua sponte, granted the Chez Josephine plaintiffs leave to amend the complaint to add claims for negligent misrepresentation and fraudulent misrepresentation on the basis of the facts already alleged. Punitive damages were limited to the negligent misrepresentation claims.

Defendants appeal from that part of the order in the Chez Josephine action which denied their motion to dismiss plaintiffs Baker and Valenza's claims of intentional infliction of emotional distress and determined that the complaint may contain factual allegations to form the basis for negligent misrepresentation and fraudulent misrepresentation. Defendants appeal from that part of the order in the Da Nico action which denied their motion to dismiss the libel per se causes of action and the negligent misrepresentation causes of action, and the claim for punitive damages.

Defendants, arguing that the facts as alleged do not establish conduct that as a matter of law was outrageous and beyond all bounds of decency, challenge the order in the Chez Josephine action insofar as the claim sounding in intentional infliction of emotional distress was not dismissed. Defendants also contend that the complaint fails to establish the requisite facts in support of either negligent or fraudulent misrepresentation. Defendants contend that the libel per se claim in the Da Nico action should have been dismissed for failure to allege publication to persons other than plaintiffs and that the "single instance" doctrine precludes libel per se insofar as each letter to each recipient constituted only a single statement apiece. The Da Nico defendants also note that Flynn was not in privity with plaintiffs and owed them no special duty, so that the claim for negligent misrepresentation requires dismissal. With regard to punitive damages, defendants urge dismissal insofar as Flynn's conduct posed no threat of public harm and the Columbia

defendants are not alleged to have authorized, ratified or participated in such conduct. Defendants also urge that fraud was not adequately pleaded.

▮ Turning first to the emotional distress claims, most of which were dismissed in any event, and from which dismissal no cross appeal is taken, we find no basis to disturb the motion court's conclusions as to those claims that were sustained in the Chez Josephine action. Generally, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" (Restatement [Second] of Torts § 46 [1]). In order to survive a motion to dismiss, a cause of action for intentional infliction of emotional distress must allege conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment *d*; *Harville v Lowville Cent. School Dist.*, 245 AD2d 1106 [1997], *lv denied* 92 NY2d 808 [1998]). Claims typically fail because the challenged conduct is not sufficiently outrageous (*Howell v New York Post Co.*, 81 NY2d 115 [1993]), or because a statement is privileged (*id.*), a factor not present in this case. The conduct must consist of more than mere insults, indignities and annoyances (*Harville, supra* at 1106). Further, the emotional distress claim is dismissible unless the claim arises as a result of a "campaign of harassment or intimidation" (*Nader v General Motors Corp.*, 25 NY2d 560, 569 [1970]). Notably, these several letters could be construed in the aggregate as presenting a campaign of harassment, albeit directed against distinct individuals, so it cannot be said as a matter of law that the fact of individual impacts vitiates what seems to have been serial acts perpetrated by a single source. While defendant Flynn in his academic research did not intend to harass plaintiffs, his ill-conceived mode of gathering data for the project may have resulted in a campaign of harassment of the individual restaurant owners. Whether or not the requisite outrageousness of the conduct has been satisfied by the allegations is, in the first instance, an issue of law for judicial determination (*id.*). Although vested with the power to do so, the motion court declined at this preanswer stage of the proceedings to find that the concededly general allegations in this case were inadequate as a matter of law. Rather, the court found the

issue of outrageousness more appropriately to be decided by a jury. Although there may be some inconsistency in that formulation, in that the court's phrasing implies a willingness to revisit the matter as a law issue at another stage of the proceedings, we do not find legal error in the court's decision to defer decision on the matter.

Our review of the record and pleadings indicates an adequate factual basis for potential findings that the conduct was sufficiently outrageous so as to support the claim. Although, as noted, Flynn might not have intended harassment, he intended to elicit a response and in doing so may have recklessly disregarded the potential consequences of that conduct. Parenthetically, making a claim of food poisoning could conceivably impact on the success of the enterprise and perhaps even destroy its viability as a business in such a highly competitive trade. Once a restaurant's reputation is tainted it is hard to undo the damage. The possibility of a forced closing of a restaurant could very likely affect the physical and emotional well-being of the restaurateurs involved, especially those who may have invested all their savings and energy into the business. After receiving the professor's letter, Jean Claude Baker averred, that, in view of professor Flynn's "high status," the letter "was like getting a death warrant from the White House. . . . The Restaurant was turned upside down to try and find out how this could have happened. Much food on hand in our kitchen was destroyed, at a cost of thousands of dollars. Vendors were notified and told to check their entire inventory. Staff members were all put on notice that if this were ever to be traced to a particular person, that individual would not only be fined, but would, probably never work in this field again." Mr. Baker further stated that "my life's work, Chez Josephine, would go out of business, or be reduced in its reputation to a second rate establishment." Frank Valenza, owner of Restaurant 222, stated that he "was certain that word of this terrible food poisoning would spread . . . I had no idea what type of response he wanted . . . This type of damage can never be undone in the restaurant business . . . I had lost all of my money on what was one of the finest restaurants in the world, The Palace. My wife had put all of her money into 222. Now 222 was about to be destroyed also, and this time it would be our fault." Thus, there may be numerous indirect effects on health caused by the resultant stress. Mr. Baker stated that he "sought psychiatric care, and went into a serious depression." Mr. Valenza stated, "I suf-

fered heart problems and agitation and this was an extremely difficult period for us." Although it is beyond the present record, one cannot help but note the recent publicity regarding the apparent suicide of a famous French chef whose restaurant was downgraded by food critics in restaurant guidebooks. While I am not correlating an individual tragedy with the present case, nevertheless, it illustrates the point that alleged outrageous conduct directed at unknown targets and without consideration of the consequences might lead to unpredictable results, especially involving New York City's highly competitive restaurant business. In any event, there is a sufficient basis to allow a jury to decide whether the conceded conduct in this case was outrageous so as to satisfy the requisite standard.

These defendants also challenge the intentional infliction of emotional distress as being duplicative of the libel claims and argue that insofar as adequate relief may be had on another tort theory, the emotional distress claim must be dismissed. If the libel claims had been sustained, then this theory of dismissal would warrant analysis. The genesis of the tort of intentional infliction of emotional distress as a departure from the common law, and as a novel means of providing relief for emotional harm when no other tort theory is viable, is set forth more fully by Chief Judge Kaye's opinion in *Howell* (at 119-121) and in our decision in *McIntyre v Manhattan Ford, Lincoln-Mercury* (256 AD2d 269 [1998], *lv denied* 94 NY2d 753 [1999]). If another traditional tort claim is pleaded and sustained, there is authority that the tort of intentional infliction of emotional distress merely duplicates the traditional tort and must be dismissed (*Demas v Levitsky*, 291 AD2d 653 [2002], *lv dismissed* 98 NY2d 728 [2002]). However, insofar as both libel and libel per se claims were dismissed in the Chez Josephine action, it follows that dismissal of the intentional infliction of emotional distress claims is not required. We agree with the motion court that the libel per se claim in the Da Nico action may survive dismissal at this juncture, there being factual questions whether the statement, which allegedly damaged the plaintiffs in their business, was published also to the Department of Health, thus evading the "single instance" rule which bars a libel per se claim (*see Amelkin v Commercial Trading Co.*, 23 AD2d 830 [1965], *affd* 17 NY2d 500 [1966]).

We also agree with the motion court to the extent that causes of action sounding in negligent and fraudulent misrepresentation appeared to be supported by the pleadings and related

documentation in the Chez Josephine action. As to the fraud theory, a plaintiff must prove a misrepresentation which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely on it, and justifiable reliance of the other party on the misrepresentation and injury (*cf. Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). The theory of negligent misrepresentation, pleaded only by the Da Nico plaintiffs, turns on the nature of the relationship between the parties. The Court of Appeals has consistently required proof of a relationship establishing either privity of contract or a relationship very close to that (*Parrott v Coopers & Lybrand*, 95 NY2d 479, 483 [2000]). Moreover, the Court of Appeals enunciated three criteria before liability for a claim of negligent misrepresentation may be attached. Plaintiff must demonstrate by proof (1) an awareness by the declarant that the statement would be used for a particular purpose, (2) reliance by the recipient of the statement, and (3) some conduct by the declarant linking the statement to the recipient and evincing an understanding of that reliance (*id.* at 484). However, at this pleading stage of the proceedings, the facts and allegations thus far presented appear to make out these claims.

Flynn was aware that his letter was being used for the purpose of eliciting a response from the recipients. He admittedly sent the false letters stating that he had eaten at the restaurant with his wife, that he had anticipated celebrating his anniversary, thus investing greater emotional resonance in the occasion, and further stated in graphic terms how illness had consumed him only a few hours later. Although Flynn further stated that he did not intend to contact regulatory authorities, one might note at least the implied threat to do so unless the letter's recipient "respond[ed] accordingly." There is a basis to find reliance by the recipients of the letters. These letters potentially pose the risk of a public health crisis, and a financial crisis for the letter recipients, with the consequence that in reliance on the information communicated, the recipients allegedly expended considerable sums of money to rectify a nonexistent problem, as well as forced employees through arduous and uncomfortable testing. The fact that Flynn sent a letter with serious connotations directly to the various entities and demanded an immediate response appeared to satisfy the third criterion concerning conduct evincing an understanding by Flynn of the reliance by the recipients. Finally, arguably, Flynn himself, by thrusting himself into the business affairs of the

recipients solely to elicit an undefined appropriate response, potentially created the basis for the requisite privity, in that the nature of the response, crafted in justifiable reliance on these letters, created a relationship, albeit an uninvited one. Hence, with reference to the criteria set forth in *Parrott v Coopers & Lybrand (supra)*, there is a basis upon which a jury could return a verdict on this theory.

Finally, compensatory damages are limited to provable pecuniary losses (*Lama Holding Co., supra* at 421; *Hanlon v Macfadden Publs.*, 302 NY 502 [1951]; *Juman v Louise Wise Servs.*, 254 AD2d 72, 74 [1998]), correlating with out-of-pocket losses (*Lama Holding Co.* at 421; *Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.*, 88 AD2d 461, 467 [1982]), a standard of recovery also applicable to the fraud damages (*cf. Rivera v Wyckoff Hgts. Hosp.*, 184 AD2d 558, 561 [1992]).

■ With regard to punitive damages, it has long been recognized that the goal is one of deterrence, and that among torts, the deterent value of punitive damages is most effective against frauds, and is especially appropriate when the fraud is aimed at the public generally and involves "high moral culpability" (*Walker v Sheldon*, 10 NY2d 401, 405 [1961]). Punitive damages require a demonstration that the wrong complained of rose to a level of "such wanton dishonesty as to imply a criminal indifference to civil obligations" (*Walker, supra* at 405; *accord Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 614 [1994]). We have incorporated the traditional standard more recently to dismiss claims for exemplary damages in cases lacking the requisite level of culpability or where the public was not the victim (*Silverman v 145 Tenants Corp.*, 248 AD2d 261 [1998] [claimed breach of warranty of habitability; only a private agreement rather than wrongdoing directed at the public]; *The Limited v McCrory Corp.*, 169 AD2d 605 [1991] [fraud and negligence claims]. Similar principles apply here. Notwithstanding Flynn's complete failure to foresee the likely consequences of his actions, we must recognize that this was, fundamentally, just a research project even though ill-considered, directed at private parties, and there is no suggestion that Flynn was seeking to maliciously hurt the targets of his study. He was seeking to elicit a response, which would then be tabulated in data, rather than to wantonly inflict pain with the intent of injuring the various plaintiffs. As such, punitive damages are not available under the facts alleged.

Accordingly, the orders of the Supreme Court, New York County (Ira Gammerman, J.), entered on or about November

29, 2002, which, in two separate actions, insofar as appealed from, denied defendants' motions to dismiss the actions for failure to state a cause of action, should be modified, on the law, to dismiss the claims for punitive damages, and otherwise affirmed, without costs.

ANDRIAS, ROSENBERGER and WILLIAMS, JJ., concur.

Orders, Supreme Court, New York County, entered on or about November 29, 2002, modified, on the law, to dismiss the claims for punitive damages, and otherwise affirmed, without costs.