OPINION OF THE COURT
Rosalyn Richter, J.
Defendants Mason Pimsler and Mallilo & Grossman each move to set aside the jury’s verdict in this action (motion sequence Nos. 10 and 11, respectively). At trial, plaintiff law firm Rosenberg, Mine & Armstrong alleged that Pimsler, an attorney formerly associated with the law firm of Mallilo & Gross-man, engaged in a scheme to misappropriate potential clients of Rosenberg. Rosenberg maintained that, on numerous occasions, Pimsler (a) called the telephone number of Rosenberg’s offices during off-hours; (b) falsely told the answering service that took the calls, Messages Plus, that he was Daniel Mine, one of Rosenberg’s partners; (c) obtained messages left with Messages Plus from potential clients of Rosenberg; and (d) steered these clients *396 to his own law firm, Mallilo & Grossman, which thereafter represented the clients in personal injury lawsuits.
Rosenberg admitted into evidence records of Messages Plus concerning all the messages it took for Rosenberg from January through May 1999, as well as records of Verizon showing telephone calls made from Pimsler’s home telephone during that same time period. These records show that Pimsler called Rosenberg’s phone number a total of approximately 52 times during those months. The records further show that a particular pattern developed. For example, the records of Messages Plus show that on the afternoon of January 9, 1999, a woman identifying herself as Ivelisse Pena called Rosenberg’s number and left her return phone number with Messages Plus. The next day, Pimsler’s home phone records reveal that he called Rosenberg’s number, and then immediately placed a phone call to the same number left by Ivelisse Pena. That very same day, Ivelisse Pena met with Mallilo & Grossman for an initial consultation.[1]
Likewise, on January 16, 1999, Yvonne Williams called Rosenberg’s number and left her phone number with Messages Plus. Several hours later, Pimsler called Rosenberg’s number and minutes later, placed a call to Yvonne Williams’s number. A week later, Yvonne Williams (and her minor child Kwame Williams) met with Mallilo & Grossman for an initial consultation. In addition to Ivelisse Pena and Yvonne Williams, the records from Messages Plus and Verizon show more than a dozen other instances of this exact pattern: a call from a potential client to Rosenberg’s answering service, followed by a call from Pimsler to the answering service, followed by a call from Pimsler to the potential client.
Pimsler himself testified that he had called Rosenberg’s number and impersonated Mine for the purpose of obtaining messages left with Rosenberg’s answering service. Although Pimsler testified that his attempts to intercept Rosenberg’s messages began in January 1999, he claimed that he never succeeded until May 1999 when he successfully obtained the name of “Ralph Watkins” and two other potential Rosenberg clients. In reality, “Ralph Watkins” was a fictitious name being used by a detective in the Queens County District Attorney’s Office who was engaged in a “sting” operation against Pimsler, which *397 began shortly after Mine reported his suspicions to law enforcement authorities. After being contacted by Pimsler, “Watkins” met with Pimsler at Mallilo & Grossman’s offices and discussed an accident that Watkins was allegedly involved in. Shortly thereafter, Pimsler was arrested and charged with criminal impersonation, a charge to which he eventually pleaded guilty.
The case was submitted to the jury on three separate causes of action: unjust enrichment, tortious interference with prospective business advantage and misappropriation. After deliberations, the jury rendered a verdict finding both Pimsler and Mallilo & Grossman liable for unjust enrichment, and awarded compensatory damages of $82,500 against Pimsler and $0 against Mallilo & Grossman. The jury further found that Pimsler and Mallilo & Grossman were liable for misappropriation with respect to Ivelisse Pena, Yvonne Williams and Kwame Williams, and awarded compensatory damages of $10,500 against Pimsler and $10,500 against Mallilo & Grossman.[2] As to punitive damages on the misappropriation cause of action, the jury awarded $343,750 against Pimsler and $962,036 against Mallilo & Grossman.[3]
Mallilo & Grossman now move pursuant to CPLR 4404 to set aside the verdict of liability and damages on the misappropriation cause of action on the grounds that the jury’s determination was contrary to the weight of the evidence and contrary to law. Pimsler maintains that the jury’s damage award must be set aside, but does not challenge the liability verdicts. At the outset, Mallilo & Grossman contend that misappropriation was an “inappropriate” charge to be submitted to the jury because this action does not involve a claim of unfair competition. However, that is precisely what this case is about. The gravamen of the misappropriation charge is unfair competition. “The principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor is predicated on the concept that no one is entitled to ‘reap where it has not sown.’ ” (Introductory Statement, 2 NY PJI2d 520 [2005], quoting International News Serv. v Associated Press, 248 US 215, 239 [1918].)
*398 The evidence at trial showed that Pimsler wrongly obtained access to Rosenberg’s potential clients by surreptitiously retrieving messages left by the clients for Rosenberg. The identity of the clients that called Rosenberg about a personal injury claim is analogous to a company’s confidential information or trade secrets. In Eastern Bus. Sys. v Specialty Bus. Solutions (292 AD2d 336, 338 [2d Dept 2002], quoting Ashland Mgt. v Janien, 82 NY2d 395, 407 [1993]), the Court stated that:
“Although there is generally no accepted definition of a trade secret, one which has been cited with approval by the Court of Appeals is ‘any formula, pattern, device or compilation of information which is used in one’s business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it.’ ”
Applying this standard, the court concludes that the names of the potential clients who called Rosenberg are sufficiently analogous to confidential information so as to support the misappropriation charge. The evidence at trial showed that Rosenberg took steps to protect the information kept by the answering service, and that a password was required to access the messages left by the clients. It took a criminal act of impersonation by Pimsler to obtain this password protected information. In fact, Mallilo & Grossman cites to no case law to support its current claim that the names of the people who called Rosenberg are not a business opportunity that is capable of being misappropriated. The only case to which they cite, Corporate Interiors, Inc. v Pappas (2 Misc 3d 1009[A], 2004 NY Slip Op 50204[U] [Sup Ct, Queens County 2004]), involves a claim of breach of fiduciary duty, which is not applicable here.
Next, Mallilo & Grossman argue that the misappropriation verdict must be set aside on the grounds that there was no evidence that Ivelisse Pena, Yvonne Williams and Kwame Williams were misappropriated by Pimsler. It is well settled that a court can set aside a verdict as a matter of law only where there is “no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978].) Likewise, a jury verdict should be set aside as contrary to the weight of the evidence only where the jury could not have reached the verdict by any fair interpretation of the evidence. (McDermott v Coffee Beanery, Ltd., 9 AD3d 195 [1st Dept 2004].) It is for the trier of fact to make determinations as to the credibility of the wit *399 nesses, and great deference is accorded to the factfinders, who had the opportunity to see and hear the witnesses. (Salazar v Fisher, 147 AD2d 470 [2d Dept 1989]; Delay v Rhinehart, 176 AD2d 1211 [4th Dept 1991].)
Applying these principles, the court concludes that the jury’s finding that Pimsler misappropriated Ivelisse Pena, Yvonne Williams and Kwame Williams is not against the weight of the evidence or contrary to law. To begin, Pimsler admitted in his testimony that he had called Rosenberg’s number and impersonated Mine for the purpose of obtaining messages left with Rosenberg’s answering service. In addition, Pimsler admitted that he successfully perpetrated the same scheme on another law firm and diverted a number of that firm’s clients to Mallilo & Gross-man. In light of the documentary evidence, the jury had a right to reject as incredible Pimsler’s testimony that the one and only time he ever succeeded in obtaining a client’s name from Rosenberg’s answering service was in connection with the incident that led to his arrest when he obtained the name of “Ralph Watkins.” Although Yvonne Williams and Ivelisse Pena maintain that they retained Pimsler independent of Rosenberg, the records show that both of them received calls from Pimsler a very short time after they left messages for Rosenberg. Moreover, although Pena denied ever having called Rosenberg, Williams testified merely that she could not recall. Thus, the jury was justified in rejecting their testimony as mistaken or untruthful, and relying instead on the documentary evidence.
Mallilo & Grossman also argue that the jury’s findings that Pimsler was acting within the scope of his employment when he misappropriated the potential clients, and that his acts were authorized and ratified by Mallilo & Grossman, are against the weight of the evidence and contrary to law. It is well settled that an employer may be vicariously liable for its employees’ tortious acts on a theory of respondeat superior if they were committed in furtherance of the employer’s business and within the scope of employment. (See Bowman v State of New York, 10 AD3d 315 [1st Dept 2004].) Thus, an employer is liable for the acts of its employee when the employee “is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee’s activities.” (Lundberg v State of New York, 25 NY2d 467, 470 [1969].)
Here, the evidence at trial showed that standard was met. Pimsler made the phone calls while he was an associate at Mai- *400 lilo & Grossman, and did so to bring business into the firm. Mallilo & Grossman encouraged new associates to bring in business and offered them a commission of 50% of the value of the case, even though they did not actually work on the case after it was brought to the firm. Mallilo & Grossman also provided a car service at the firm’s expense to pick up clients brought in by Pimsler. On these facts, the jury could reasonably have concluded that Pimsler was acting within the scope of his employment and in furtherance of Mallilo & Grossman’s business. (See, e.g., Sports Car Ctr. of Syracuse v Bombard, 249 AD2d 988, 989 [4th Dept 1998] [“(i)f the corporation selected a dishonest person to represent itself, it, and not the plaintiff, should bear the risk of unauthorized acts, having placed the person in a position to perpetrate the wrong”], quoting Rudge v Laidlaw-Coggeshall, Inc., 96 AD2d 837, 838 [2d Dept 1983].)
Likewise, although not necessary to a finding of liability under a respondeat superior theory, the jury’s finding that Mallilo & Grossman ratified Pimsler’s acts is not against the weight of the evidence or contrary to law. The evidence showed that Pimsler, who was admitted to practice less than a year at the time of his wrongful acts, had referred over 100 clients to Mallilo & Grossman, more than double the number of clients brought in by the next highest associate, who had two to three years’ experience. The evidence also showed that Pimsler was not permitted to actually sign Mallilo & Grossman’s client intake form but, instead, those forms had to be reviewed and signed by a firm partner. Thus, no question exists that the firm was well aware of the extraordinary volume of clients that Pimsler, a brand new associate, was bringing in. In light of these facts, and other issues relating to Pimsler’s solicitation techniqúes, a jury could have rationally found that Mallilo & Grossman should have conducted a more thorough inquiry as to where the clients were coming from. Its failure to have done that supports the jury’s finding that the firm ratified, condoned or consented to Pimsler’s misconduct.
Moreover, evidence was presented, most of it by Pimsler, that he was willing to get clients at any cost, including solicitation of clients by questionable means other than impersonating Mr. Mine. Pimsler also explained that he went on television shows on behalf of Mallilo & Grossman, at the firm’s request, where he made statements that were of questionable ethics. In addition, the jury’s conclusion was supported by Pimsler’s testimony that after his arrest and suspension, Mallilo & Grossman never *401 asked him the source of his referrals. Pimsler also testified that even after he was arrested, Mallilo & Grossman continued to accept cases that he referred to the firm. Under the totality of circumstances, the jury’s conclusion that Mallilo & Grossman ratified, condoned or consented to Pimsler’s misconduct is reasonable. Thus, the court denies Mallilo & Grossman’s motion to set aside the jury’s verdict of liability for misappropriation. (See Torres v Esaian, 5 AD3d 670 [2d Dept 2004] [where jury’s verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view].)
Both Mallilo & Grossman and Pimsler move to set aside the jury’s determination of damages. The court concludes that the jury’s awards of compensatory damages are not against the weight of the evidence. Rosenberg submitted evidence to the jury showing the value of the cases of the clients who were misappropriated by Pimsler and diverted to Mallilo & Gross-man. In addition, there was evidence of over a dozen additional clients whom Pimsler attempted to obtain for Mallilo & Gross-man. Although Pimsler was not successful in signing up everyone whose name he obtained from the answering service, the jury was free to conclude that Rosenberg lost these clients as a result of Pimsler’s actions since Pimsler may have made contact with them before Mr. Mine could even pick up the messages. Moreover, there was evidence presented that clients of a law firm often refer other clients to the firm, and thus the jury could have reasonably concluded that additional legal fees were lost due to the loss of this second generation of clients. (See, e.g., Suburban Graphics Supply Corp. v Nagle, 5 AD3d 663 [2d Dept 2004] [future lost profits, although often an approximation, may be awarded].) Finally, Rosenberg presented the testimony of a marketing expert, Ari Kresch, who testified as to the relationship between Rosenberg’s advertising costs and the realization of new clients. Based on Kresch’s testimony, the jury was free to conclude that as a result of Pimsler’s scheme, Rosenberg was deprived of the full benefit of its advertising costs. Under the totality of the circumstances, the court cannot conclude that the jury’s verdict on compensatory damages is against the weight of the evidence or contrary to law.[4]
The same cannot be said about the jury’s decision to award punitive damages against Mallilo & Grossman. “Punitive dam *402 ages are awarded in tort actions ‘[w]here the defendant’s wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime.’ ” (Prozeralik v Capital Cities Communications, 82 NY2d 466, 479 [1993], quoting Prosser and Keeton, Torts § 2, at 9 [5th ed 1984].) Thus, the harmful conduct must be “intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence.” (McDougald v Garber, 73 NY2d 246, 254 [1989].) Furthermore, an award of punitive damages must be supported by “clear, unequivocal and convincing evidence.” (Munoz v Puretz, 301 AD2d 382, 384 [1st Dept 2003].)
Here, although there was sufficient evidence for the jury to conclude, by a preponderance of the evidence, that Mallilo & Grossman was liable for misappropriation, the jury’s award of punitive damages against the firm was not supported by the higher evidentiary standard of clear and convincing evidence. Nor did the proof at trial establish that Mallilo & Grossman engaged in “outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another’s rights.” (Prozeralik v Capital Cities Communications, 82 NY2d at 479-480 [1993].) There was no evidence presented that Mallilo & Gross-man had any involvement in initiating the theft of Rosenberg’s clients; the proof at trial showed that Pimsler came up with this idea. Nor was there any proof that Mallilo & Grossman engaged in any criminal acts of impersonation. In contrast, Pimsler impersonated Mr. Mine over 50 times. And, unlike Pimsler, there was no evidence that Mallilo & Grossman stole clients from any other law firm. In light of these critical differences between Pimsler’s conduct and Mallilo & Grossman’s conduct, and the higher standard of proof, the court cannot conclude that the firm’s behavior was “so outrageous as to evince a high degree of moral turpitude.” (Rosenkrantz v Steinberg, 13 AD3d 88, 88 [1st Dept 2004]; see also Cohen v Mazoh, 12 AD3d 296, 296 [1st Dept 2004] [“the facts alleged do not establish gross, wanton or willful fraud or other morally culpable conduct to a degree sufficiently warranting punitive damages”]; Camillo v Geer, 185 AD2d 192 [1st Dept 1992] [record does not support a finding of *403 outrageous conduct warranting award of punitive damages].) Thus, the court concludes that the jury’s verdict awarding punitive damages against Mallilo & Grossman must be set aside as a matter of law.
However, the evidence at trial was more than sufficient to show that Pimsler’s conduct was sufficiently egregious, reprehensible, intentional and outrageous to justify a punitive damage award. To begin, Pimsler’s malicious acts involved more than 50 attempts to access the confidential messages left by potential clients on Rosenberg’s answering service. Unlike most lawyers, Pimsler did not obtain these names through his own hard work, but rather simply took them from a competing law firm. There can be no doubt that such wanton theft of a competitor’s potential clients falls far below the high standard expected of members of the bar.
An award of punitive damages is further supported by the fact that Pimsler pleaded guilty to criminal impersonation. (See Mulder v Donaldson, Lufkin & Jenrette, 208 AD2d 301, 308 [1st Dept 1995] [punitive damages warranted where misconduct demonstrates “such wanton dishonesty as to imply a criminal indifference to civil obligations”].) Furthermore, Pimsler has shown no remorse for his actions and, in light of the jury’s finding, has committed perjury in this action. Finally, the jury’s decision to award punitive damages was proper in order to deter any such future conduct, and to send a message to the public that they can have confidence in the legal profession. (See 164 Mulberry St. Corp. v Columbia Univ., 4 AD3d 49, 60 [1st Dept 2004] [“deterent value of punitive damages is most effective against frauds, and is especially appropriate when the fraud is aimed at the public generally”].) In light of these aggravating factors, the court concludes that the jury’s award of punitive damages against Pimsler was not contrary to the weight of the evidence or contrary to law.
Nevertheless, it is beyond question that due process concerns must be considered in evaluating the amount of an award of punitive damages. Thus, the Supreme Court has stated that one of the factors that must be reviewed is the ratio between compensatory damages and punitive damages. (See State Farm Mut. Auto. Ins. Co. v Campbell, 538 US 408 [2003].) Although no precise mathematical formula has been adopted, the courts have expressed the view that a ratio of 10:1 is the outside ratio, and that single digit multipliers are more likely to comport with due process. (See State Farm Mut. Auto. Ins. Co. v Campbell, 538 US *404 at 410; BMW of N. Am., Inc. v Gore, 517 US 559 [1996]; Ansonia Assoc. Ltd. Partnership v Public Serv. Mut. Ins. Co., 257 AD2d 84 [1st Dept 1999].)
Here, the jury awarded compensatory damages of $10,500 against Pimsler on the misappropriation charge and punitive damages of $343,750. Applying the above principles, the court concludes that the punitive damage award must be reduced in order to comport with due process. In Sawtelle v Waddell & Reed (304 AD2d 103, 111 [1st Dept 2003], quoting BMW of N. Am. v Gore, 517 US at 575), the Court stated that “the degree of reprehensibility of a defendant’s misconduct, is ‘[p]erhaps the most important’ consideration in determining the rationality of a punitive damages award.” In light of the fact that Pimsler’s misconduct was particularly reprehensible and outrageous, the court will use a ratio of 10:1, which is the upper limit. Therefore, the punitive damages award against Pimsler can be no greater than $105,000, which represents 10 times the amount of compensatory damages awarded on the misappropriation claim. (See Maskantz v Hayes, 4 Misc 3d 1030[A], 2004 NY Slip Op 51130[U] [Sup Ct, NY County 2004] [reducing punitive damage award so that ratio between compensatory and punitive damages is 10:1].)
Accordingly, it is ordered that defendants’ motions are granted to the extent that the jury’s verdict on tortious interference with prospective business advantage, and its resultant damages award, is set aside; and it is further ordered that Mallilo & Grossman’s motion is granted to the extent that the jury’s award of punitive damages is set aside as a matter of law; and it is further ordered that Pimsler’s motion is granted to the extent that the jury’s award of punitive damages is set aside and a new trial on punitive damages, only as to Pimsler, is directed, unless plaintiff, within 20 days of service of a copy of this order with notice of entry, stipulates to reduce the punitive damages award to $105,000 and to entry of an amended judgment in accordance therewith; and it is further ordered that the motions are otherwise denied.

. The parties entered into a stipulation as to the dates Pena and Williams first met with Mallilo & Grossman for an initial consultation.

. Because the jury failed to find all the essential elements of tortious interference with prospective business advantage, its verdict on that cause of action, and the accompanying damages award, must be set aside.

. The court did not submit to the jury the issue of punitive damages on the unjust enrichment claim, and the parties do not challenge that determination here.

. Mallilo & Grossman also contend that the jury’s verdict was inconsistent. The parties, however, have failed to provide the court with those pages of the transcript which would show whether the court was alerted to the alleged *402 inconsistency after the verdict came in. Of course, such failure to do so before the jury was discharged would render the alleged error unpreserved. (See Pelosi v TJA Maintenance Programming, 247 AD2d 453 [2d Dept 1998].) In any event, the court concludes that the verdicts are not inconsistent since the allegedly conflicting interrogatories involved different types of damages, such as the loss of clients and the diminution of the value of advertising services, and different levels of culpability of each of the defendants.