Scollar v City of New York (2018 NY Slip Op 02032)





Scollar v City of New York


2018 NY Slip Op 02032


Decided on March 22, 2018


Appellate Division, First Department


Moulton, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 22, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter Tom, J.P.
Barbara R. Kapnick
Cynthia S. Kern
Peter H. Moulton, JJ.


155608/14 5353 

[*1]Allison Scollar, Plaintiff-Appellant,
v
City of New York, et al., Defendants-Respondents.



Plaintiff appeals from an order of the Supreme Court, New York County (Margaret A. Chan, J.), entered January 27, 2017, which granted defendants' CPLR 3211(a)(7) motion to dismiss the complaint.




Marc E. Scollar, Staten Island, for appellant.
Zachary W. Carter, Corporation Counsel, New York (Melanie T. West and Jane L. Gordon of counsel), for respondents.



MOULTON, J.


This dispute arises out of an acrimonious child custody battle between plaintiff, who is the child's adoptive mother and custodial parent, and her former partner Brook Altman, who is the child's birth mother and noncustodial parent. Regina DeBellis, a sergeant with the New York City Police Department (NYPD), allegedly took various tortious actions to aid Altman in her dispute with plaintiff.
Plaintiff sued DeBellis and the City of New York as a result of these tortious actions, and Supreme Court dismissed the entire complaint. We now modify to reinstate certain causes of action.
According to plaintiff, her first contact with DeBellis came when DeBellis called her cell phone on May 6, 2013 [FN1]. According to plaintiff's 50-h hearing testimony, DeBellis told her that [*2]plaintiff's child was too sick to be transferred from Altman's home to plaintiff's home, and, further, that plaintiff was a neglectful mother. DeBellis also asserted that she "had called ACS and started an investigation." Plaintiff claims that the Administration for Children's Services investigated the report on May 7, 2013, and determined that same day that the child was not at imminent risk.
Despite ACS's determination, plaintiff claims that on May 8, 2013 or May 9, 2013, DeBellis and two officers knocked on plaintiff's door and stated that they did not need a warrant to enter because they were investigating a child at imminent risk [FN2]. Plaintiff let them in. The three interrogated plaintiff in her home - - first in her living room and then in her bedroom - - for approximately two hours. No ACS worker was present. At her 50-h hearing, plaintiff claimed that during the course of this interrogation DeBellis questioned plaintiff on her choice of camp for her child, commented that plaintiff should fire the child's therapist, whom Altman did not like, and referred to the child's court-appointed law guardian as plaintiff's "pawn." DeBellis also allegedly threatened to call the Family Court Judge presiding over the child custody case to let her know that she gave custody to the wrong parent. Plaintiff testified at her 50-h hearing that after the police interrogation concluded, DeBellis threatened plaintiff "that she was going to call ACS again."
On or about May 14, 2013, plaintiff alleges, DeBellis followed through on her threat to contact the Family Court Judge. According to plaintiff, the Judge stated on the record on May 21, 2013 that DeBellis had inappropriately attempted to influence her decision. Plaintiff alleges that between May 14, 2013 and May 28, 2013, DeBellis also contacted the child's law guardian to claim that the child was at imminent risk.
On or about May 15, 2013, plaintiff alleges, DeBellis maliciously or recklessly made a second false complaint to ACS [FN3]. Then, on June 10, 2013 and July 16, 2013, officers allegedly acting under the direction of DeBellis (but not accompanied by DeBellis) questioned plaintiff again in her home, without securing a warrant and without a basis to believe that the child was at imminent risk.
Plaintiff asserts that all of the above caused her severe emotional distress and psychological damage. According to plaintiff, she complained to DeBellis's precinct commander and to the Department of Internal Affairs. Plaintiff also filed Civilian Complaint Reports on May 16, 2013, May 30, 2013 and June 12, 2013 [FN4].
Plaintiff's complaint alleges six causes of action: 1) violation of 42 USC §§ 1983 and 1985, 2) abuse of process, 3) malicious prosecution, 4) negligent infliction of emotional distress, 5) negligence and 6) negligent training and supervision.
The City moved to dismiss plaintiff's entire complaint under CPLR 3211(a)(7). Supreme Court granted the City's motion in its entirety.
Supreme Court held that the notice of claim did not allege the necessary elements for [*3]malicious prosecution and abuse of process. It also found that plaintiff failed to allege a claim under 42 USC § 1983 because plaintiff did not allege that she was subject to an unlawful search at her home or that the City had an official policy or custom that caused plaintiff to be denied a constitutional right. The Court dismissed the 42 USC § 1985 cause of action because plaintiff did not allege facts to indicate an agreement or conspiracy between DeBellis and any other person. Supreme Court held that the notice of claim was too vague to provide defendants with notice of a claim for negligent training and supervision. The Court further found that the complaint failed to state a claim for negligent infliction of emotional distress because the alleged conduct did not rise to the requisite level of outrageous behavior. Nor did the complaint state a claim for general negligence (or negligent investigation), which Supreme Court held was not cognizable in the absence of facts supporting a special duty.
We now modify Supreme Court's decision. We find that the complaint states claims against against DeBellis for intentional infliction of emotional distress based on her alleged malicious or reckless false reporting to ACS and her campaign of harassment. The complaint also states a claim against both defendants under 42 USC § 1983, and against the City for negligent training and supervision.
In deciding this appeal, we must liberally construe the complaint, as amplified by plaintiff's notice of claim, the transcript of the 50-h hearing and other papers submitted by the parties on the motions (see Jeudy v City of New York, 142 AD3d 821, 821 [1st Dept 2016]; Kaminsky v FSP Inc., 5 AD3d 251, 251-252 [1st Dept 2004]), presume the facts alleged in support of the complaint to be true, and afford plaintiff the benefit of every possible favorable inference (see Anderson v Edmiston & Co., Inc., 131 AD3d 416, 417 [1st Dept 2015]). The fact that a cause of action is not expressly demoninated is not fatal if the factual allegations in the complaint fit within a cause of action (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Castellotti v Free, 138 AD3d 198 [1st Dept 2016]).
While she does not denominate the claim in haec verba, plaintiff's allegations concerning DeBellis's behavior state a claim for intentional infliction of emotional distress.
Some of DeBellis's alleged actions concern abuse of child protection procedures, which are governed by the Social Services Law [FN5]. A civil action may be maintained based on the false reporting of child abuse and maltreatment (see Selapack v Iroquois Cent. School Dist., 17 AD3d 1169 [4th Dept 2005] [action alleging intentional infliction of emotional distress and defamation]; see also Biondo v Ossining Union Free School Dist., 66 AD3d 725 [2d Dept 2009] [action alleging defamation and negligent hiring and training]; Scholz v Wright, 57 AD3d 645 [2d Dept 2008] [action alleging negligence and defamation]; Zornberg v North Shore Univ. Hosp., 29 AD3d 986 [2d Dept 2006] [action alleging defamation])[FN6]. The Social Services Law also [*4]provides that the making of a false report is a class A misdemeanor in violation of Penal Law § 240.50(4), and requires ACS to refer suspected cases of false reporting to law enforcement or the District Attorney (Social Services Law § 422[14]).
Here, although not expressly pleaded, the factual allegations in the complaint fit within a cause of action against DeBellis for intentional infliction of emotional distress based on her alleged malicious or reckless false reporting to ACS and malicious campaign of harassment.[FN7]
The tort of intentional infliction of emotional distress consists of four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (Howell v New York Post Co., 81 NY2d 115, 121 [1993])[FN8]. The standard of outrageous conduct is "strict," "rigorous" and "difficult to satisfy" (id. at 122 [internal quotation marks and citation omitted]). However, that is not the case when there is a "deliberate and malicious campaign of harassment or intimidation" (Nader v General Motors Corp., 25 NY2d 560, 569 [1970]; see also 164 Mulberry St. Corp. v Columbia Univ., 4 AD3d 49 [1st Dept 2004], lv dismissed 2 NY3d 793 [2004] [restaurant owners stated a claim for intentional infliction of emotional distress based on a professor's false claim of food poisoning, which disrupted restaurants' businesses and resulted in health department inspections]). Additionally, the outrageous nature of the conduct can be established when it arises from the abuse of a position of power, as is alleged here (see Vasarhelyi v New School for Social Research, 230 AD2d 658 [1st Dept 1996] [cause of action for intentional infliction of emotional distress stated where school's president created a report criticizing school officials, which he falsely attributed to plaintiff, hired attorneys to subject plaintiff to lengthy interrogations and ultimately fired her]).
Here, assuming the truth of plaintiff's allegations, as we must on a motion to dismiss, we cannot say, as a matter of law, that DeBellis's actions did not rise to the requisite level of outrageous conduct. The facts alleged by plaintiff describe both (1) a deliberate and malicious campaign of harassment and intimidation and (2) an abuse of power.
Plaintiff has also stated a claim against defendants under 42 USC § 1983 for deprivation of plaintiff's constitutional rights, specifically, her right under the Fourth Amendment to be free from warrantless and unlawful entries into the home (see US Const Amend IV; 42 USC § 1983; Bah v City of New York, 2014 WL 1760063, *7, 2014 US Dist LEXIS 60856, *19 [SD NY, May 1, 2014, No. 13-Civ-6690(PKC)(KNF)]). We reject defendants' argument that plaintiff's complaint is devoid of any allegation that she was subject to a search in her home. At the very core of the Fourth Amendment is the right to retreat into one's own home and "there be free from unreasonable governmental intrusion" (Silverman v United States, 365 US 505, 511 [1961]). "The Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained" (Kyllo v United States, 533 US 27, 37 [2001]). Any unjustified physical invasion of the structure of the home, "by even a fraction of an inch" is too [*5]much (Silverman, 365 US at 512). A warrant is required for the officer who barely cracks open the front door and sees nothing but a rug because the entire home is "held safe from prying government eyes" (Kyllo, 533 US at 37). Thus, contrary to defendants' argument, the mere allegation that the police entered plaintiff's home on the illegitimate pretext that plaintiff's child was at imminent risk is sufficient to plead a Fourth Amendment violation.
The record shows that plaintiff reported DeBellis's actions to DeBellis's commander, to the Department of Internal Affairs and in three Civilian Complaint Reports. The child's attorney and the child's therapist pleaded with NYPD's domestic violence unit, in writing, for the home entries to cease on the ground that they were potentially harming the child's mental health.
Despite these allegations of repeated notice to DeBellis's superiors of her actions, there is no indication in the present record that any action was taken to restrain her. Accordingly, contrary to the City's arguments, plaintiff has stated a claim for holding the City liable under § 1983 on account of its gross negligence or deliberate indifference to DeBellis's unconstitutional actions (see Manti v New York City Tr. Auth., 165 AD2d 373, 379-380 [1st Dept 1991] [complaint's allegation that New York City Transit Authority failed to supervise its bus unit sufficiently alleged the defendant's deliberate indifference to the plaintiffs' constitutional rights in violation of 42 USC § 1983]; Pendleton v City of New York, 44 AD3d 733 [2d Dept 2007]; Poe v Leonard, 282 F3d 123, 140 [2d Cir 2002]).
Contrary to Supreme Court's conclusion, plaintiff's sixth cause of action states a claim against the City for negligent supervision and retention of DeBellis (see Gonzalez v City of New York, 133 AD3d 65 [1st Dept 2015]). Under this theory, an employer may be liable for the acts of an employee outside the scope of his or her employment (id.; see also Restatement [Second] of Agency § 213, Comment d; Restatement [Second] of Torts § 317). Contrary to the City's argument, the facts permit an inference that DeBellis was acting outside of the scope of her employment, and, as plaintiff argues, "had some personal axe to grind." The cause of action is also sufficiently asserted in the notice of claim. As the City acknowledges, plaintiff described the City's failure to restrain DeBellis after plaintiff lodged her complaints. While this description was in the factual recitation of the circumstances giving rise to her claims, as opposed to in the section identifying her causes of action, the City nevertheless received notice.
Supreme Court correctly found that because no criminal or civil proceeding or action was commenced against plaintiff, no cause of action for malicious prosecution was stated (see Broughton v State of New York, 37 NY2d 451 [1975], cert denied 423 US 929 [1975])[FN9]. Plaintiff unpersuasively argues that the potential for a neglect proceeding is enough because the crux of a malicious prosecution claim is malice. However, malice is merely one element of the cause of action. ACS did not commence a neglect proceeding because, according to plaintiff, the reports were unfounded.
Supreme Court also correctly found that plaintiff failed to state a cause of action for abuse of process because no process, criminal or civil, was issued (see Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 403 [1975]).
Plaintiff has abandoned her claims for recovery under 42 USC § 1985, general negligence, and negligent infliction of emotional distress, by failing to address those claims in [*6]her brief (see Hardwick v Auriemma, 116 AD3d 465, 468 [1st Dept 2014], lv denied 23 NY3d 908 [2014]). Were we to consider these claims, we would find that they were correctly dismissed.
Accordingly the order of the Supreme Court, New York County (Margaret A. Chan, J.), entered January 27, 2017, which granted defendants' CPLR 3211(a)(7) motion to dismiss the complaint, should be modified, on the law, to deny the motion as to plaintiff's first cause of action to the extent it seeks recovery under 42 USC § 1983 against defendants, to deny the motion as to plaintiff's sixth cause of action against defendant City of New York for negligent training and supervision, and to deny the
motion to the extent that a cause of action is stated against defendant Regina DeBellis for intentional infliction of emotional distress, and otherwise affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Margaret A. Chan, J.), entered January 27, 2017, modified, on the law, to deny defendants' motion to dismiss the complaint as to plaintiff's first cause of action to the extent it seeks recovery under 42 USC § 1983 against defendants, to deny the motion as to plaintiff's sixth cause of action against defendant City of New York for negligent training and supervision, and to deny the motion to the extent that a cause of action is stated against defendant Regina DeBellis for intentional infliction of emotional distress, and otherwise affirmed, without costs.
Opinion by Moulton, J. All concur.
Tom, J.P., Kapnick, Kern, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 22, 2018
DEPUTY CLERK



Footnotes

Footnote 1:Unless otherwise stated, the facts recited herein are from the complaint, the notice of claim and/or the General Municipal Law § 50-h hearing (50-h hearing).

Footnote 2:The complaint and the notice of claim refer to the date of May 8, 2013 but the 50-h hearing refers to the date of May 9, 2013.

Footnote 3:Plaintiff asserts that ACS closed both complaints as unfounded.

Footnote 4:As no discovery has yet occurred, the relationship, if any, between DeBellis and Altman has not been established. The City characterizes DeBellis as "overzealous," while plaintiff suspects that DeBellis had a personal relationship with Altman.

Footnote 5:Any person may make a report to ACS if that person has reasonable cause to suspect that a child is an abused or maltreated child (Social Services Law § 414). Certain individuals and institutions are mandated by law to report such cases of suspected child abuse or maltreatment (Social Services Law § 413). Those mandatory reporters are entitled to immunity if the report was made in good faith (Social Services Law § 419).

Footnote 6:The Social Services Law recognizes the existence of a civil cause of action based on the false reporting of child abuse or maltreatment and discusses when the subject of an unfounded report may introduce the report into evidence in a civil action or proceeding (Social Services Law § 422[5][b][i]).

Footnote 7:Plaintiff asserted claims for malicious prosecution and abuse of process in an apparent effort to properly denominate a cause of action, but these claims fail for the reasons discussed infra.

Footnote 8:The claim for intentional infliction of emotional harm is not available against governmental entities (see Pezhman v City of New York, 47 AD3d 493 [1st Dept 2008]).

Footnote 9:A claim for malicious prosecution may also lie when an administrative proceeding is commenced which contains sufficient attributes of a judicial proceeding (see e.g. Manti, 165 AD2d at 381; Groat v Town Bd. of Town of Glenville, 73 AD2d 426 [3d Dept 1980, appeal dismissed 50 NY2d 928 [1980]).