[764 NYS2d 236]

Mario P. Vitale, Respondent, v Saul P. Steinberg et al.,
Appellants, et al., Defendants.

First Department, May 29, 2003

108

---

### APPEARANCES OF COUNSEL

*Clifford James* of counsel *(Blair C. Fensterstock* on the brief; *Fensterstock & Partners LLP*, attorneys), for respondent.

*Claudia L. Hammerman* of counsel *(Liza M. Velazquez* on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison*, attorneys), for appellants.

### OPINION OF THE COURT

BUCKLEY, P.J.

Plaintiff commenced this action against his former employer, Reliance Insurance Company (RIC), its parent, Reliance Group Holdings, Inc. (RGH), and several officers and directors of those companies, for, inter alia, breach of fiduciary duty, fraud by concealment, an accounting, breach of contract, and unjust enrichment, arising out of a written "key management incentive benefit plan." Pursuant to the plan, administered by a compensation committee of the board of directors of RIC, consisting of individual defendants Saul P. Steinberg, Robert M. Steinberg and George E. Bello, participants earned "units" each policy year from a bonus pool derived from a calculation of the pretax operating profits of Reliance National, an operating unit of RIC. However, benefits were paid out over a multi-year period, during which profitability could be reassessed and the bonus pool and benefits could be recalculated. The plan also provided that losses in a plan year could offset benefits from other plan years. The complaint alleges that defendants used "inaccurate and improper" accounting methods, and that some of the individual defendants manipulated the company's profits by diverting income to themselves, in order to reduce the plan bonus pool, which deprived plaintiff of benefits.

An employer-employee relationship providing for the division of profits will not give rise to a fiduciary obligation on the part of the employer absent an agreement to also share losses (*see Michnick v Parkell Prods.*, 215 AD2d 462 [1995]; *Reichert v MacFarland Bldrs.*, 85 AD2d 767 [1981]; *Byrne v Blaker Adv. Agency*, 239 App Div 395 [1933]; *Hathaway v Clendening Co.*, 135 App Div 407 [1909]; *see also Freedman v Pearlman*, 271

AD2d 301 [2000]). Under the plan's multi-year determination and payout of benefits, the profits of prior years could be offset by losses from a later year, but losses could only reduce the amount of benefits participants might receive, as far down as zero benefits, and the plan never required participants to contribute to make good on negative amounts, i.e., losses. The computation of profits, even within one particular year, necessarily entails the addition of income and the subtraction of expenditures, a fact made clear in the plan's definition of "pretax operating profit"; thus, only in the broadest sense are losses "shared." That expansive interpretation, however, renders meaningless a distinction between "sharing profits" and "sharing profits and losses," a difference which has never been treated as academic (*see e.g. Wiener v Lazard Freres & Co.*, 241 AD2d 114 [1998]; *Chanler v Roberts*, 200 AD2d 489, 491 [1994], *lv dismissed and denied* 84 NY2d 903 [1994]). The fact that, under the plan's provisions, losses from a prior year may be included in the calculation of profits over a multi-year benefit period does not convert the profit-sharing system into one in which losses are shared. There is no requirement at law that the calculation of profits be confined to one calendar or fiscal year, and the parties were free to fashion a calculation covering several plan years. Accordingly, the plan provided only for a sharing of profits, not losses, and therefore did not create a fiduciary relationship.

The fact that plaintiff was dependent upon his employers to calculate the profits and benefits did not transform the relationship from one of employment into a fiduciary one (*see Freedman*, 271 AD2d at 305 [employee's "trust" that his employer would "treat him fairly" did not give rise to a fiduciary duty]). For example, in *Michnick* (215 AD2d at 462), there was no fiduciary obligation, even though the employer had agreed to pay a 5% commission on each product that the employee originated or evaluated and that was sold as part of the employer's line. Similarly, in *Reichert* (85 AD2d at 768), there was no fiduciary relationship where the employee was to receive a bonus of 5% of the gross profit of new work, defined as the final contract price less the cost of construction, including the plaintiff employee's salary for time spent on the project. As explained in *Hathaway* (135 App Div at 408): "An agreement made by an employer that [an employee] shall share in the profits of [the] business, as entire or partial compensation for his services * * * [is] a contract * * * of mere hiring and providing for compensation in a particular manner supposedly

tending to induce greater energy and faithfulness on the part of the employee, but no trust or fiduciary relation is created." Since there was no fiduciary duty, the claims for breach of fiduciary duty, an accounting and constructive fraud should have been dismissed (*see Waldman v Englishtown Sportswear*, 92 AD2d 833, 835 [1983]).

■ Plaintiff nevertheless seeks, under the doctrine of piercing the corporate veil, to proceed on his claims for breach of the plan agreement by the five remaining individual defendants, Saul P. Steinberg, Robert M. Steinberg and George E. Bello (members of the boards and compensation committees of RGH and RIC), as well as Lowell C. Freiberg and Howard E. Steinberg (members of the RGH board).

Plaintiff alleges that the individual defendants, RGH and RIC used improper and inaccurate accounting methods to systematically reduce the plan bonus pool, and that those defendants removed Dennis Busti from his position as President and CEO of Reliance National solely to prevent him from carrying out his intention to exclude the unprofitable 1998 plan year from the bonus pool, as he was allowed to do under the written terms of the plan. According to the complaint, defendants engaged in such activities in order to reduce the liabilities of RIC and Reliance National to make the companies more attractive to prospective purchasers. Furthermore, the individual defendants allegedly "attributed more income to themselves and less income to the Plan, thereby converting income to them that would otherwise have been paid to [plaintiff] and other Plan participants" (complaint ¶ 96).

According to plaintiff himself, both the purported accounting improprieties and the removal of Busti were effected in order to assist RGH in its desired sale of RIC and/or Reliance National; therefore, although RGH would have benefitted from a sale or a higher sales price, and may have acted as the alter ego of RIC/Reliance National, there is no allegation that the individual defendants would have benefitted from such a transaction, and thus no showing that they used the company as "a vehicle for purely personal rather than corporate ends" (*Bonanni v Straight Arrow Publs.*, 133 AD2d 585, 587 [1987]; *see Matter of Kummerfeld [Sakai]*, 186 AD2d 90, 91 [1992], *lv dismissed and denied* 82 NY2d 682 [1993]). To the extent plaintiff avers that the diversion of income to the individual defendants was accomplished so that RGH could consummate a favorable sale of RIC and/or Reliance National, the assertion suffers from the same defect as the pleadings concerning ac-

counting practices and the removal of Busti. Insofar as plaintiff contends that the individual defendants took compensation from Reliance Group not to attract a buyer but to enrich themselves, the complaint is insufficient. There is no allegation that the individual defendants were unauthorized to pay themselves the income or any showing that the amount was unearned, excessive or otherwise improper. Plaintiff does not even offer a comparison with the amounts paid the individual defendants in prior years or a showing of the manner in which the payments to them were calculated. The bare assertions of the complaint, that the directors of a company approved compensation packages for themselves, as they were authorized to do, does not demonstrate the type of self-dealing necessary to pierce the corporate veil and hold the directors personally liable. To say that payments to the individual defendants reduced the profits, concomitantly reducing the bonus pool and benefits available to the plan participants, is not enough by itself; under such a formulation, the individual defendants would have been entitled to no income, an argument even plaintiff does not advance. Since "the complaint 'is totally devoid of solid, nonconclusory allegations' regarding defendant[s'] use of [the companies] as [their] corporate alter-ego" (*Sequa Corp. v Christopher*, 176 AD2d 498 [1991] [quoting *Perez v One Clark St. Hous. Corp.*, 108 AD2d 844, 845 (1985)]), the breach of contract claims as against the Steinberg defendants, Bello and Freiberg should be dismissed.

Finally, the existence of the plan agreement, an express contract governing the subject matter of plaintiff's claims, also bars the unjust enrichment cause of action as against the individual defendants, notwithstanding the fact that they were not signatories to that agreement (*see Bellino Schwartz Padob Adv. v Solaris Mktg. Group*, 222 AD2d 313 [1995]; *Feigen v Advance Capital Mgt. Corp.*, 150 AD2d 281, 283 [1989], *lv dismissed and denied* 74 NY2d 874 [1989]).

Accordingly, the order of the Supreme Court, New York County (Helen Freedman, J.), entered May 4, 2001, insofar as it declined to dismiss the remaining causes of action as against the individual defendants, should be reversed, on the law, without costs, the action as against the corporate defendants having been stayed pursuant to bankruptcy and liquidation proceedings. The Clerk is directed to enter judgment in favor of defendants Saul P. Steinberg, Robert M. Steinberg, George E. Bello, Lowell C. Freiberg and Howard E. Steinberg, dismissing the complaint as against them.

NARDELLI, TOM, MAZZARELLI and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered May 4, 2001, reversed, on the law, without costs, and the remaining causes of action against the individual defendants dismissed. The Clerk is directed to enter judgment in favor of defendants Saul P. Steinberg, Robert M. Steinberg, George E. Bello, Lowell C. Freiberg and Howard E. Steinberg, dismissing the complaint as against them.