A. Brod, Inc. v Worldwide Dreams, L.L.C. (2004 NY Slip Op 50733(U))

[*1]

A. Brod, Inc. v Worldwide Dreams, L.L.C.

2004 NY Slip Op 50733(U)

Decided on May 7, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 7, 2004

Supreme Court, New York County
A. BROD, INC., EILEEN BROD, ELIZABETH BROD PFLAUM and MICHAEL A. BROD,
against
WORLDWIDE DREAMS, L.L.C. a/k/a WORLDWIDE DREAMS; ABC Corporations, (1-10); ROGER GIMBEL; GEOFFREY GIMBEL and ALLAN FELDMAN, Defendants.
114130/03

Sherry Klein Heitler, J.
Defendants move, pursuant to CPLR 3211(a)(7), for dismissal of plaintiffs' fourth, fifth, sixth and eighth causes of action, and all claims for attorney's fees, in this suit for, among other things, breach of the three individual plaintiffs' employment agreements.
I. Facts
Individual plaintiffs Eileen Brod, Elizabeth Brod Pflaum, and Michael A. Brod (together, the Brods) were principals in plaintiff A. Brod, Inc. (A. Brod), a fourth-generation company involved in the business of wholesale women's fashion accessories. A. Brod began experiencing grave financial difficulties in 2001, which compelled plaintiffs to look for a solution which would, in some manner, retain the viability of the company.
In 2002, A. Brod was acquired by defendant Worldwide Dreams, L.L.C. (WWD). Pursuant to individual employment agreements, all of the individual plaintiffs became WWD employees, involved in running a separate women's accessories division, known as the Dreams Division (later known as Accessory Street). Eileen Brod was appointed President of the Dreams Division. Elizabeth Brod Pflaum became Vice President, Production, of the Dreams Division. Michael A. Brod became Executive Vice President of the Dreams Division.
Commencing in 2002, a series of events occurred which culminated in the summary termination of the Brods' employment with WWD, and resulted in the instant action, in which the plaintiffs bring claims, as applicable on this motion, for breach of the covenant of good faith and fair dealing (fourth cause of action), intentional infliction of emotional distress (fifth cause of action), defamation (sixth cause of action), and for an accounting (eighth cause of action).
II. Discussion
On a motion to dismiss pursuant to CPLR 3211(a)(7), the court is to "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." Leon v [*2]Martinez, 84 NY2d 83, 87-88 (1994); see also Morganthow & Latham v Bank of New York Company, Inc., 305 AD2d 74, 78 (1st Dept 2003).
A. Breach of Covenant of Good Faith and Fair Dealing
Every contract is subject to an implied covenant of good faith and fair dealing. Wood v Lucy, Lady Duff-Gordon, 222 NY 88, 90-91 (1917); Jaffe v Paramount Communications Inc., 222 AD2d 17, 22-23 (1st Dept 1996). The covenant is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." Jaffe, 222 AD2d at 22-23; Skillgames, LLC v Brody, 1 AD3d 247, 252 (1st Dept 2003); see also Dalton v Educational Testing Service, 87 NY2d 384, 389 (1995)("neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract [internal quotes and citation omitted]"). However, where the claims made under the covenant of good faith and fair dealing are duplicative of the plaintiff's breach of contact claims, they will be dismissed. See Parker East 67th Associates, L.P., v Minister, Elders and Deacons of Reformed Protestant Dutch Church of City of New York, 301 AD2d 453, 454 (1st Dept 2003), appeal denied, 100 NY2d 502 (2003).
In their claims for breach of contract, as set forth in their first three causes of action, the Brods allege that they each had a written employment agreement with WWD, which was to terminate in 2004, if not extended by the parties. They claim that they fulfilled their obligations under the agreements, but were each improperly and unjustifiably terminated on July 10, 2003. They each claim to have been damaged by, among other things, their terminations, and by WWD's refusal to pay compensation allegedly due to them under the employment agreements. Each individual plaintiff seeks salary and benefits under their agreements, while Eileen Brod, whose contract allegedly entitled her to an Incentive Bonus based on a calculation of Dreams Division's gross profits, and a Profit Sharing plan, equal to a percentage of the division's net profits, seeks to recover these benefits as well.
In their fourth cause of action, plaintiffs maintain that WWD breached the covenant of good faith and fair dealing by

(a) improperly charging the Dreams Division (later known as Accessory Street) various excessive service and maintenance fees; (b) manipulating and/or falsifying various accountings and/or financial documents; ) improperly materially reducing and/or changing the Individual Plaintiffs' employment responsibilities at WWD; and (d) failing to build an appropriate showroom for the Dreams Division (later known as Accessory Street).
Amended Complaint, ¶ 137.
Defendants claim that all of these charges are duplicative of plaintiffs' breach of contract claims and, as such, should be dismissed.
The first two of the claims alleged above are not duplicative of plaintiffs' contract claims, but are claims that acts perpetrated by defendants deprived plaintiffs, especially Eileen Brod, of the fruits of their contracts, because these acts allegedly reduced the "bottom line" of the Dreams Division's performance, and adversely affected the amount of compensation which Eileen Brod could expect to receive under the Profit Sharing and Incentive Bonus rights contained in her agreement with WWD. Therefore, these claims state a claim for the breach of the implied covenant of good faith [*3]and fair dealing as to Eileen Brod. The third claim, that WWD materially reduced and/or changed the individual plaintiffs' employment duties is duplicative of the same claim made in their breach of contract cause of action, and will be dismissed.
The last claim made by plaintiffs is that WWD breached the covenant of good faith and fair dealing by failing to build the "attractive showroom" mentioned in the agreements. However, the contracts between WWD and the individual plaintiffs did not specifically call for the building of a showroom for the Dreams Division, but instead, stated only that WWD "intended" to build such a showroom. An intention is not the same as a promise, much less, a contractual obligation. As the implied covenant of good faith and fair dealing cannot be used to add duties inconsistent with the contract in question, defendants will not be held to have breached the covenant by failing to build the showroom. See Murphy v American Home Products Corporation, 58 NY2d 293, 304 (1983)("[n]o obligation can be implied ... which would be inconsistent with other terms of the contractual relationship").
In summary, plaintiffs have pled a claim for breach of the implied covenant of good faith and fair dealing only to the extent that they claim that defendants improperly charged excessive service charges to the Dreams Division, and manipulated or falsified accountings and financial documents, which might have affected Eileen Brod's interest in receiving the full benefit of her employment agreement.
B. Intentional Infliction of Emotional Distress
Defendants are alleged to have taken the following actions which plaintiffs claim support a claim for the intentional infliction of emotional distress: (a) surreptitiously videotaping Eileen Brod Pflaum (Pflaum) in her office for six months, while refusing to admit to her that they were doing so. It is further alleged that defendants (b) showed the video tapes to various WWD employees, including subordinates of Pflaum; c) falsely accused Eileen Brod of making "side deals" and other actions adverse to WWD and made statements which allegedly disparaged her re her business ethics; and (d) terminated the Brods' employment on July 10, 2003 by "escort[ing] them from WWD's premises, and parad[ing] them before their co-workers," without allowing them to take any personal belongings which could not be removed by hand, to their extreme embarrassment and humiliation. Complaint, ¶¶ 76-86.
The tort of intentional infliction of emotional distress has the following four elements: "(I) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v New York Post Company, Inc., 81 NY2d 115, 121 (1993). "The requirements of the rule are rigorous, and difficult to satisfy [internal quotes and citation omitted]." Id. at 122. "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id., quoting Murphy v American Home Products Corporation, 58 NY2d at 303; see also 164 Mulberry Street Corp. v Columbia University, — AD2d —, 771 NYS2d 16, 21 (1st Dept 2004).
With regard to defendants' videotaping of Pflaum, the court notes that the tort of negligent infliction of emotional distress has been stated in a similar case, where video cameras were secreted in a women's restroom so that the unknowing victims could be videotaped in various stages of undress, and where the perpetrators of the videotaping displayed the tapes to others "for purposes [*4]of trade." See Dana v Oak Park Marina, Inc., 230 AD2d 204, 209 (4th Dept 1997). In Dana, as here, plaintiffs allege that there was no legitimate reason for the videotaping, and that the videotapes were displayed to others for nefarious purposes, in the present case, ostensibly to cause Pflaum emotional distress. However, in the present case, plaintiff has not viewed the videotapes and has not alleged that she was depicted therein in a state of undress. For their part, defendants do not deny that this videotaping took place, but do not proffer a reason, business or otherwise, for their videotaping of Pflaum, or their alleged display of these tapes to Pflaum's subordinates.
Given the lack of information supplied by either plaintiffs or defendants as to this claim, the court cannot, at this juncture, determine whether, as a matter of law, the videotaping of Pflaum is arguably so obviously outrageous or "utterly intolerable," Dana (230 AD2d 204, supra), as to warrant submission of this claim to a jury. See 164 Mulberry Street Corp. v Columbia University, 771 NYS2d at 21. Therefore, as to this cause of action, the court will hold its decision in abeyance pending a conference with the parties.
Plaintiffs have not, however, set forth a claim for the intentional infliction of emotional harm based on any abusive remarks made to them by defendants, or by their summary and public termination. To make a claim for the intentional infliction of emotional distress, "the conduct alleged 'must consist of more than mere insults, indignities and annoyances'[citation omitted]." Liebowitz v Bank Leumi Trust Company of New York, 152 AD2d 169, 182 (2d Dept 1989). Defendants' comments to Eileen Brod concerning any allegedly adverse actions she may have taken against WWD's interests do not amount to the kind of outrageous behavior this tort was intended to curb. Neither is escorting the individual plaintiffs from the premises, regardless of the embarrassment and humiliation which may have resulted. See Abeles v Mellon Bank Corporation, 298 AD2d 106 (1st Dept 2002)(escorting terminated plaintiff from the premises); Arrington v Liz Claiborne, Inc., 260 AD2d 267 (1st Dept 1999)(escorting terminated plaintiffs to their desks to retrieve personal property). As a result, plaintiffs have failed to state any claim for the intentional infliction of emotional distress.
C. Defamation
According to the complaint, the statements that form the basis for plaintiffs' defamation claim are as follows: that defendant Geoffrey Gimbel accused Eileen Brod of making "side deals." (Complaint, ¶ 56); that defendants "regularly and repeatedly openly laughed at and ridiculed" Eileen Brod's business acumen, her concern for her staff's safety in the event of an emergency, and her "track record" in the accessory business (Complaint, ¶ 57); that, at more than one meeting of the presidents of the WWD divisions, a WWD employee "questioned why Eileen Brod's ... presence was necessary and derisively asked, in words or in substance, 'whether Eileen Brod had anything better to do'" than attend such meetings (Complaint ¶ 58); that the business skills and ethics of the Brods were disparaged at a meeting of WWD staff, causing Eileen Brod to leave the meeting in tears. Complaint, ¶ 59, 60.
Further allegations of defamatory statements are found later in the complaint, where plaintiffs allege that: defendants falsely informed "vendors, customers, WWD employees, and/or other third parties" that the individual plaintiffs had left WWD's employment by mutual agreement with WWD (Complaint, ¶ 81), and that these statements "created the incorrect appearance that the Individual Plaintiffs had left voluntarily shortly before 'market week,'" an event which, apparently, the individual plaintiffs would be expected to attend for the benefit of WWD's customers. Complaint, [*5]¶ 82. Plaintiffs claim that these alleged representations caused injury to their reputations in the industry.
"Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace." Town of Massena v Healthcare Underwriters Mutual Insurance Company, 98 NY2d 435, 444 (2002); Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 379 (1977), cert. denied, 434 US 969, 98 S. Ct. 514, 54 L.Ed.2d 456 (1977); Lewis v Newsday, Inc., 246 AD2d 434, 436-437 (1st Dept 1998). Pursuant to CPLR 3016(a), the "particular words complained of" must be set forth in the complaint. See Wyllie v District Attorney of County of Kings, 2 AD3d 714 (2d Dept 2003). It is also crucial that the persons who made the statements, and the person or persons to whom the statements were made, be identified, as well as the dates, times, and places where the allegedly defamatory remarks were made. See Bell v Alden Owners, Inc., 299 AD2d 207 (1st Dept 2002), appeal denied, 100 NY2d 506 (2003); Vardi v Mutual Life Insurance Company of New York, 136 AD2d 453, 456 (1st Dept 1988)(complaint must set forth "time, manner and persons to whom publications were made").
Plaintiffs' defamation claims fail for lack of specificity. Plaintiffs never allege that the alleged remarks concerning Eileen Brod's alleged "side deals" were ever published to any third person. Plaintiffs fail to specify the dates when any of the other allegedly defamatory statements were made, and fail to specify to whom the statements were made. It is also insufficient to allege that words were made "in substance." Qualifications in the pleading "by use of the words 'to the effect', 'substantially', or words of similar import generally renders the complaint defective [citation omitted]." Geddes v Princess Properties International, Ltd., 88 AD2d 835, 835 (1st Dept 1982).
Plaintiffs ask that they be allowed discovery as to the "vendors, customers, WWD employees, and/or other third parties" (Complaint, ¶ 81) who were told that the individual plaintiffs' decision to leave right before "market week" was a mutual one between themselves and WWD, citing CPLR 3211(d). In the present case, plaintiffs claim that this information cannot be pleaded with more specificity "until defendants disclose which vendors, customers, and which third parties defendants spoke of the termination of plaintiffs, and when these communications were made." Plaintiffs' Memorandum of Law, at 24.
CPLR 3211(d) permits discovery preceding the possible dismissal of a claim where "facts essential to justify opposition may exist but cannot then be stated." Plaintiffs cite to Ramsey v Mary Imogene Bassett Hospital (113 AD2d 149 [3d Dept 1985]), for the proposition that discovery may be had in a defamation case to determine to whom certain statements had been made, if the identities of those parties were not otherwise available to plaintiff. The plaintiffs herein claim that they cannot identify the parties to whom the statements regarding their terminations were made, because they no longer have contact with "past vendors and/or customers" and would have to contact hundreds of parties "with no guaranty of success" to find to whom the statements were made. Plaintiffs' Memorandum of Law, at 24.
Pre-dismissal discovery in the present case is not warranted under either CPLR 3211(d) or Ramsey v Mary Imogene Bassett Hospital, supra. To require defendants to disclose to whom they made the allegedly defamatory statements would be to require them to admit, pre-answer, that the statements were made. In fact, without knowledge as to a single party to whom the alleged communication was made, plaintiffs have not explained how they know the statements were made at all.
[*6]
In contrast to the present case, in Ramsey (supra) the plaintiff knew for a certainty that statements had been made, which he claimed were defamatory, and which he knew had been disseminated to third parties. Plaintiffs do not have this certainty, and so cannot say that facts essential to justify opposition to the motion may exist. Nor have plaintiffs explained why they do not know which other persons, such as co-workers and "other third parties" may have received the communication in question. Thus, they have failed to show that the information they seek is within the exclusive control of defendants. See, Brown v Rochester General Hospital, 292 AD2d 855 (4th Dept 2002)(CPLR 3211[d] requires showing that discovery sought is within exclusive control of defendants), appeal denied, 98 NY2d 607 (2002). Since plaintiffs have failed to produce "some tangible evidence showing the validity of the cause[] of action" (School of Visual Arts v Kuprewicz, — Misc 2d —, 771 NYS2d 804, 813 [Sup Ct, NY County 2003]), plaintiffs' request for discovery to flesh out their deficient claim is denied, and the sixth cause of action must be dismissed.
D. Accounting
Plaintiffs have failed to state a claim for an accounting. In order to justify an accounting, there must be a partnership or fiduciary relationship between the parties. See Simons v Ross, 309 AD2d 667 (1st Dept 2003). There is no fiduciary relationship between the parties here, merely an employer/employee relationship, which in not fiduciary in nature. See Vitale v Steinberg, 307 AD2d 107 (1st Dept 2003). Under Vitale (supra), "[a]n employer-employee relationship providing for a division of profits will not give rise to a fiduciary obligation on the part of the employer absent an agreement to also share losses." Id. at 108. In the present action, plaintiffs' claim that Eileen Brod stood to suffer a reduction in her compensation formula, based on the financial success or failure of the accessories division, is not tantamount to an obligation to be responsible for WWD's losses. Therefore, the eighth cause of action must be dismissed.
E. Attorney's Fees
Plaintiffs' claims for attorney's fees, made in each cause of action, must also be dismissed. Attorney's fees may only be recovered where authorized by "statute, court rule or written agreement of the parties." Campbell v Citibank, N.A., 302 AD2d 150, 154 (1st Dept 2003). The present case does not meet these requirements.
III. Conclusion
Accordingly, it is
ORDERED that the motion brought by defendants is decided as follows:
(a) the claims in the fourth cause of action, as noted in plaintiffs' amended complaint
 at ¶137(c) and (d) are dismissed for the reasons set forth above;
(b) the sixth and eighth causes of action are dismissed;
(c) plaintiffs' claims for attorney's fees are dismissed; and
(d) decision on defendants' motion to dismiss the fifth cause of action is held in abeyance; and it is further
ORDERED that counsel for both parties shall appear for a conference on May 17, 2004, at 9:30 a.m. at 60 Centre Street, Room 438, New York, New York 10007.
This shall constitute the decision and order of the court.
DATED: MAY 7, 2004
[*7] 
 SHERRY KLEIN HEITLER
 J.S.C.