OPINION OF THE COURT
Henry F. Zwack, J.
In this CPLR article 78 proceeding, petitioner Alan/Sara Outman,[1] an inmate at the Clinton Correctional Facility, seeks review and vacatur of the denial of her grievance in which she requested special housing on account of her diagnosis of gender dysphoria.[2] Petitioner alleges that respondent, knowing the diagnosis, failed to meet her need for separate housing in a specialized unit, and such failure is discriminatory and in violation of her rights under the Americans with Disabilities Act, the Human Rights Law of the State of New York, the Equal Protection Clause of the Constitution, and the 8th Amendment. Petitioner further alleges that respondent’s failure to meet her specialized housing needs is a violation of the Federal Prison Rape Elimination Act (PREA). Petitioner also alleges that respondent Department of Corrections and Community Supervision (DOCCS) has failed to comply with its own policies and directives by placing her in housing that has failed to protect her from sexual harassment and abuse. Petitioner argues respondent’s determinations have therefore been arbitrary, capricious and made in error of its own procedure, and must be vacated.
Respondent opposes the relief sought in the petition, and asserts that petitioner’s housing determination is reasonable, rational and made in conformity with all the applicable rules and regulations regarding the same, including the requirements set forth in Correction Law § 72. Respondent also points out that neither DOCCS procedures nor the PREA standards guarantee any inmate a particular placement. Respondent also argues that petitioner has failed to set out causes of action for violations of her constitutional rights, and as a whole, her petition should be dismissed for failure to state a cause of action.
Petitioner alleges that even while she was housed in a special housing unit, namely the Assessment and Program Prepara *1131 tion Unit (APPU) — which is a high profile and high security unit for the most victim-prone inmates — she was continuously harassed and sexually propositioned, and her complaints were ignored by DOCCS’ staff. The petition further alleges that by failing to place her in a special housing unit just for the transgendered, she continues to be at risk, and also that in her present APPU housing she is denied programs and opportunities that are available to the general prison population. Petitioner believes that the denial of special housing has implicated her constitutional rights, the Human Rights Law, and the Americans with Disabilities Act, and also runs afoul of her rights under the PREA.
In its answer, respondent asserts that petitioner has failed to state a viable cause of action upon which any relief can be granted, as it has appropriately exercised all statutory and regulatory requirements in accordance with its directives and policies in determining her housing. Respondent also argues that the petitioner’s claims are not justiciable, and that this court lacks subject matter jurisdiction over any claim relating to its implementation of the Federal PREA. Respondent asserts that in response to petitioner’s request for specialized, separate housing — a claim in which she raised the issue that she could not be housed with homosexual men — petitioner was advised that an inmate does not have a right to any particular housing placement and that on a case by case basis DOCCS is authorized to make individualized determinations as to whether placement of an inmate will ensure the inmate’s health and safety or present management or security problems.
Review of an agency determination is extremely limited, with the court’s inquiry limited to whether the challenged determination was arbitrary or capricious, in sum whether it had a rational basis (Matter of Johnson v Ambach, 74 AD2d 986, 987 [3d Dept 1980]). Substantial evidence would be required to demonstrate that the present determination is irrational (Matter of Sutton v Selsky, 52 AD3d 1135 [3d Dept 2008]). Where a matter before the court concerns the interpretation of interrelated statutes, the deference the court is required to give to an agency extends to its interpretation of the statutes (Matter of Tribeca Equity Partners, L.P. v New York State Div. of Hous. & Community Renewal, 2015 NY Slip Op 25216[U] [Sup Ct, NY County 2015]).
Correction Law § 72 grants DOCCS the sole authority in determining housing placements, and the courts have held *1132 that an inmate in the custody of DOCCS does not possess any constitutional right to reside in any particular facility (Matter of Allegretti v Coughlin, 81 AD2d 958 [3d Dept 1981]). As the Superintendent points out in his response to petitioner’s grievance, DOCCS considers on a case by case basis whether a particular placement ensures an inmate’s health and safety, and whether the placement would present management or security issues. Albeit DOCCS provides specialized housing for disabled inmates, it offers no special units for inmates who have been diagnosed with gender dysphoria; instead all gender dysphoric transgender inmates are immediately removed from any form of “male housing assignments/classifications.” The Superintendent points out that “neither the forthcoming DOCCS procedures nor the PREA Standards guarantee any inmate a particular placement.”
In its determination of petitioner’s appeal, DOCCS’ Central Office Review Committee (CORC) correctly cites to the relevant section of the PREA regulations, 28 CFR 115.42 (g), which prohibits the agency from placing lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units or wings solely on the basis of such identification or status, unless it is pursuant to a consent order or judgment made for the purpose of protecting the inmate. Thus, petitioner is incorrect when she cites to this statute as requiring DOCCS to provide her with separate housing.[3]
Turning to petitioner alleging that DOCCS procedure for determining her housing is infringing upon a fundamental due process right, the Due Process Clause of the Constitution ensures that all persons who are similarly situated be treated alike and where, as here, the nature of the alleged violation involves gender, it is subject to strict scrutiny (Samuels v New York State Dept. of Health, 29 AD3d 9 [3d Dept 2006]). That said, even “when a policy or regulation impinges on a prisoner’s constitutional rights, the action [nevertheless] ‘is valid if it is reasonably related to legitimate penological interests’ ” (Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475, 491 [2009], quoting Turner v Safley, 482 US 78, 89 [1987]).
*1133 To determine whether a prison policy or regulation impinges upon a prisoner’s constitutional rights or is reasonably related to legitimate penological interests, the court must consider a number of factors,
“including the extent to which the right asserted by the inmate is compatible with incarceration; whether the challenged prison action or policy is consistent with the institutional interests that are cited to justify it; whether [there are] other means . . . available to the inmate to exercise the right in question; whether accommodation of the inmate’s asserted right will adversely impact the prison population, employees or the allocation of prison resources; and whether, viewed in a pragmatic light, it is feasible for prison authorities to address their institutional concerns through other means” (Matter of Bezio v Dorsey, 21 NY3d 93, 104 [2013]).
Here, the court’s first inquiry is whether the petition sufficiently sets out facts to support the conclusion that there has been an infringement of petitioner’s rights, mindful that the petition must set out specific non-conclusory allegations regarding respondent’s conduct. Factual allegations that consist of bare legal conclusions are not to be treated “as true” nor to be accorded “every favorable inference” (Skillgames, LLC v Brody, 1 AD3d 247 [1st Dept 2003]) and where the petition “is totally devoid of solid, nonconclusory allegations,” it is properly dismissed (Vitale v Steinberg, 307 AD2d 107, 111 [1st Dept 2003]).
Even according petitioner, as a self represented litigant, some degree of latitude (Duffen v State of New York, 245 AD2d 653, 653-654 [3d Dept 1997]), the petition fails. In the widest and most general terms, petitioner appears to allege that she has been deprived of her constitutional rights by being housed in what is akin to “protective custody,” a sort of custody which does not afford her as many benefits (programming, prison privileges) as other inmates in the general population receive. Thus, using the analysis set forth by the Court of Appeals in Bezio, the court determines that the creation of a special accommodation for transgendered inmates — specialized housing providing all of the same benefits and programming presently available to the general prison population — is incompatible with incarceration. Here, the court is mindful that petitioner wishes to be separate and apart from the general population due to concerns for her mental and physical safety. Doing so, *1134 inappropriately, would, take this group right out of other “similarly situated” inmates and make them a new class. In sum, the court finds DOCCS rules and procedures, which include a semiannual individualized assessment of an inmate’s housing needs, including consideration of mental and physical safety, and separating the transgendered from the general population, are reasonably related to legitimate penological interests and not a violation of petitioner’s legal rights.[4]
Turning to petitioner’s 8th and 14th Amendment claims, again, on account of lack of specificity in the petition, the court is unable to determine what rights of petitioner’s have been implicated. Petitioner does not elaborate on exactly what specific liberty interests have allegedly been violated by the prison’s failure to accommodate her in special housing, particularly housing which does not exist for any other inmate in a prison setting. Similarly for her claim of cruel and inhuman treatment, in order to establish such an 8th Amendment claim, petitioner would need to allege and prove that respondent’s actions or omissions amounted to a “deliberate indifference to [a] serious medical need[ ]” (Estelle v Gamble, 429 US 97, 106 [1976]), which she utterly failed to do.
Petitioner also claims to have suffered injuries as a result of respondent’s violation of the New York State Human Rights Law (codified in Executive Law § 296). Particularly, Executive Law § 296 (2) (a) makes it impermissible for any place of “public accommodation” to withhold or deny “any of the accommodations” based upon, among other things, “sexual orientation” or “disability.” However viewed, a prison is simply not a “public accommodation.” Thus, under the very limited allegations set out in the petition, the Human Rights Law is not in any way implicated in this proceeding.
Next, turning to petitioner’s argument that the determination by DOCCS amounts to a violation of her rights under the Americans with Disabilities Act, it also lacks merit. Notably, 42 USC § 12211 (b) (1) “expressly defined disability in a way that excludes transsexualism” (Rentos v Oce-Office Sys., 1996 WL 737215, *8, 1996 US Dist LEXIS 19060, *21 [SD NY, Dec. 24, 1996, No. 95 Civ 7908 (LAP)] [internal quotation marks omitted]).
*1135 Lastly, with respect to petitioner’s allegations that DOCCS’ staff failed to act on her complaints of sexual harassment, CORC correctly concluded that she failed to present sufficient evidence to support these allegations (Matter of Nunez v Central Off. Review Comm., 126 AD3d 1248 [3d Dept 2015]). In the petition, she acknowledges that staff did take steps when she reported the abuse at the hands of a “known predator,” including moving the inmate to another company. Similarly, with respect to petitioner’s allegations that her case was not appropriately scrutinized by DOCCS, the petitioner has presented no evidence that her housing needs have not been subjected to the required scrutiny by DOCCS, offering nothing more than conclusory allegations to contradict respondent’s affirmative statements that it has done as much as it is required to do under Correction Law § 72.
All said, respondent properly afforded petitioner the relief entitled to.
Accordingly, it is hereby ordered that the petition is denied in its entirety.

. The court will honor petitioner’s preference to be referred to by the female pronoun.

. A diagnostic class recognized in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Petitioner offered her confidential psychological report, which includes the diagnosis “Gender Dysphoria in Adults, DSM-5 302.85 (ICD 10.64). Male to female transsexualism with a sexual attraction (orientation) to males.”

. In reply petitioner argues that this is not what she is saying at all, but rather that PREA requires the agency to ensure that she is safe from all forms of harassment. She further argues that there is nothing in the statute that prevents DOCCS from entering into a consent order to ensure that she is appropriately housed and free from sexual harassment.

. Nor would it constitute “cruel and inhuman treatment,” however petitioner has not specified how her present housing has been either cruel or inhumane.