Christopher V.L.
Giffuni, Plaintiff,

against
Linda Towler, DILYS MARION GORE, ANTHONY
MARTINS, DR. DON HEADLEY, MARTIN D. DOBELLE, individually and as Executor for
the Estate of Claire Dobelle, MIRIAM LILLIAN DOBELLE, MOLLY L. DOBELLE,
JOHN/JANE DOES, 1-5 and JOHN/JANE DOE ENTITIES, 1-5,
Defendants.


612755-15

WHITE & WOLNERMAN, PLLC
Attorneys for Plaintiff
950 Third Avenue, 11th Floor
New York, New York 10022
SARISOHN LAW PARTNERS LLP
Attorneys for Defendants Linda Towler,
Dilys Marion Gore and Anthony Martins
350 Veterans Memorial Highway
Commack, New York 11725


Elizabeth H. Emerson, J.

Upon the following papers read on this motionfor summary judgment ; Notice of
Motion and supporting papers61-96 ; Notice of Cross Motion and supporting papers;
Answering Affidavits and supporting papers98-147 ; Replying Affidavits and supporting
papers163-165; it is,
ORDERED that the motion by the defendants Linda Towler, Dilys Marion
Gore, and Anthony Martins for summary judgment is granted.
The plaintiff, Christopher Giffuni, is a certified public accountant. One of his clients was
Avery Biomedical Devices, Inc. ("Avery"), which was owned by Claire Dobelle until her death in
2015. Avery designed and manufactured medical devices. Its primary product was a diaphragm
pacemaker that provided ventilatory support for patients with chronic respiratory insufficiencies.
After Claire Dobelle died, ownership of Avery passed to her children, the defendants Martin,
Miriam, and Molly Dobelle (the "Dobelle defendants"). Martin Dobelle also owned a controlling
interest in a related company, Pinnacle Bionics, Inc. ("Pinnacle"). The defendant Anthony
Martins was a long-time employee of Avery and a minority shareholder of Pinnacle. The
defendant Linda Towler was Avery's Chief Financial Officer. The defendant Dilys Marion Gore
was another long-time employee of Avery. 
In 2014, Martin Dobelle approached the plaintiff about selling Avery and Pinnacle. The
plaintiff then approached Towler about their buying Avery and Pinnacle together.[FN1]
 To that end, they drafted a non-binding letter of intent dated April 29, 2014, which they sent to
Claire and Martin Dobelle. In it, Towler and the plaintiff (or an entity formed by them) proposed
to acquire substantially all of the stock of Avery and Pinnacle "for $5 to $8 million dollars in
total to be further determined, negotiated, and allocated[.]" The letter of intent clearly indicated
that, except for certain specified provisions, it did not constitute a legally binding or enforceable
agreement and that a binding commitment would only result if and when the parties entered into
a definitive agreement.[FN2]
 
The Dobelles made a counterproposal that was unacceptable to Towler, who no longer
wished to proceed. However, in a subsequent letter of intent dated May 8, 2014, the plaintiff and
Towler proposed an alternative arrangement in which they would become partners with Claire
Dobelle and "raise the necessary working capital for the continuation and success of Avery[.]"
The plaintiff, Towler, and Claire Dobelle would become full partners, with Claire Dobelle
contributing Avery's assets and the plaintiff and Towler contributing their expertise, know-how,
and financing. Like the previous letter of intent, it was not legally binding, except for certain
specified provisions, and it contemplated the preparation of a formal, definitive agreement once
the due diligence was [*2]completed.[FN3]
 On or about May 22, 2014, Towler again decided that she did not wish to proceed. 
The Dobelles subsequently tried to sell Avery and Pinnacle to a third party. Those
negotiations continued into early 2015 and were discontinued when Claire Dobelle died in March
of that year. Afterwards, the plaintiff and Towler renewed their proposal to purchase Avery and
Pinnacle together. To that end, they retained an attorney, the plaintiff's long-time friend Ken
Magida, to represent them. Magida sent them a retainer letter dated April 30, 2015, in which he
outlined the terms of his engagement by them. He advised them that, although it was customary
for partners in a business venture to employ the same attorney, each was entitled to separate
counsel and that, if conflicts arose between them, it might become necessary for one or both of
them to obtain independent counsel. The plaintiff and Towler both signed the retainer letter in
their individual capacities. 
Magida drafted a letter of intent dated April 24, 2015, that was sent to Martin Dobelle. In it,
he outlined the preliminary terms and conditions under which the plaintiff and Towler, or an
entity to be formed by them, proposed to acquire all of the assets of Avery and 51% of the capital
stock of Pinnacle. The letter of intent, like the previous ones, was not binding, except for certain
specified provisions, unless and until the execution and delivery of "a purchase agreement in
form and substance mutually acceptable to each party and their counsel" and completion of the
buyers' due diligence. The purchase price was $3 million ($2.5 million for the Avery assets and
$500,000 for the Pinnacle stock), $500,000 of which was to be paid in cash at the closing. The
balance was to be paid pursuant to two promissory notes that would be personally guaranteed by
the plaintiff and Towler, jointly and severally. The letter of intent was signed by the plaintiff and
Towler individually and by Martin Dobelle in both his individual and corporate capacities.
By the end of May 2015, Towler had changed her mind about working with the plaintiff. She
no longer wished to move forward with the deal because she did not think they could work
together anymore. She so advised the plaintiff on May 26, 2015. In an email to Towler dated May
27, 2015, the plaintiff proposed a few alternate ways to proceed. They were:
"1. You can do this on your own."
"2. You can do
this and I could help as a consultant."
"3. I can do it on my own
(assuming I could finance it alone which I think and hope I could) and you would be welcome to
continue in your capacity as CFO and handle all I thought you were going to. I would be willing
to give you an interest in it as well."
"4. You can go back to
status Quo and hope Marty is willing to fund it."
Towler picked the third
option. The plaintiff advised Magida in an email dated May 31, 2015, that he and Towler had
agreed on compensation and benefit terms and that he had suggested her ownership interest be
5%. The plaintiff went on to say the following:
"Now I need to brainstorm with you as to how I can be sure I have her as long as I
need her, but have the ability to send her packing if she becomes
trouble."
On June 1, 2015, the plaintiff and Towler sent an email to
Martin Dobelle in which they stated, in pertinent part, the following:
"The lawyers are about to move forward so we wanted to tell you of a change in the
direction on the transaction. We have been working together now on the business for about 10
weeks. We have made progress and developed a good working
relationship.
"However, unfortunately, late last week, we both
determined that it was unlikely we would be comfortable working on the business going forward
as partners. Sadly, after discussing it we decided we would have no choice but to discontinue the
process.
"But then, after further thought and discussion the same
day, in consideration of the Dobelle family, the employees and the patients, we determined and
agreed that we could be happy to work together in a different manner. Chris suggested, and Linda
accepted, an arrangement whereby Chris would purchase the assets alone and Linda would
remain the CFO/CEO with an employment agreement and a minority interest given to her as part
of the agreement."
On June 11, 2015, Magida prepared and emailed a
draft employment agreement to the plaintiff and Towler. Towler refused to sign it because it
contained too many onerous restrictions. In addition to not allowing her to write checks or enter
into contracts over $10,000, the agreement did not provide for raises; it limited her authority; it
did not provide for standard perqs such as a cell phone; it took away her benefits after a year, and
it contained a 5-year restrictive covenant, among other things. In an email to Towler the next day,
the plaintiff claimed that Magida had accidentally removed the 5% ownership interest from the
draft, and he sent Towler the language that purportedly had been left out. Towler responded that
the plaintiff had failed to address the agreement's other deficiencies. She concluded, "There is
absolutely no upside to me signing this contract." The closing, which was scheduled for June 15,
2015, did not take place.
In an email dated June 17, 2015, Martin Dobelle advised the plaintiff that the defendant
Dilys Gore had approached Towler about an employee takeover "some time ago." He also
advised the plaintiff that, when he and Towler came to the conclusion that they could not work
together, Towler spoke to Gore and the defendant Anthony Martins about an employee takeover.
Dobelle went on to say, in pertinent part, the following:
"This morning they told me that they have enough cash between them to essentially
replicate the deal that you and I had negotiated, but at a higher valuation and with a sizable equity
component for the Dobelles (which I wanted from the beginning).
* *
*
"[G]iven my history with Linda, Dilys, and Tony, their very long association with
Avery, the valuation that they gave Pinnacle, and the equity components being offered in both
Avery [*3]and Pinnacle, and the compliance hurdle which would
have be [sic] faced otherwise, I have decided to try and make the new deal
work."
Towler, Gore, and Martins ultimately formed GMT Holdings, Inc.,
to purchase Avery and Pinnacle as 100% shareholders. The sale closed on July 1, 2015. This
action ensued.
The complaint contains causes of action against Towler for breach of fiduciary duty and
fraud, against the other defendants for aiding and abetting Towler's breach of fiduciary duty and
fraud, and against all of the defendants for an accounting, unjust enrichment, a declaratory
judgment and a constructive trust. The plaintiff's theory of the case is as follows: Giffuni and
Towler entered into an agreement to pursue the acquisition of Avery and Pinnacle as equal
partners. They, therefore, each owed a fiduciary duty to the other. Towler, aided and abetted by
the other defendants, breached her fiduciary duty to Giffuni by usurping a partnership
opportunity. 
The Dobelle defendants moved to dismiss the complaint. In a separate motion, Towler, Gore,
Martins, and Dr. Headley also moved to dismiss the complaint. Both motions were denied after
oral argument on August 18, 2016. The defendants answered. Towler, Gore, Martins, and Dr.
Headley asserted counterclaims that they subsequently withdrew. The action was discontinued
against the Dobelle defendants and Dr. Headley pursuant to a stipulation dated December 13,
2018. Discovery is now complete, and Towler, Gore, and Martins (the "defendants") move for
summary judgment.
The plaintiff contends that the current motion should be denied because the defendants raise
the same arguments in support of summary judgment that they raised in support of dismissal,
which was denied. That determination, however, is not the law of the case. When, as here, a
motion for summary judgment follows a motion to dismiss, the law-of-the-case doctrine does not
apply because the scope of review of the two motions is different (see, Friedman v
Connecticut Gen. Life Ins. Co., 30 AD3d 349, 349-350 affd as mod 9 NY3d 105). A
motion to dismiss examines the sufficiency of the pleadings, while a motion for summary
judgment examines the sufficiency of the evidence underlying the pleadings (Id.
349-350). To grant summary judgment it must clearly appear that there are no material and
triable issues of fact presented (see, Sillman v Twentieth Century Fox Film
Corp., 3 NY2d 395, 404). The question to be decided by the court is whether there is a issue
of fact as to the existence of a partnership between the plaintiff and Towler to acquire Avery and
Pinnacle. 
A partnership is an association of two or more persons to carry on as co-owners of a business
for profit (Partnership Law § 10 [1]). When, as here, there is no written partnership
agreement between the parties, the court must determine whether a partnership-in-fact existed
from the conduct, intention, and relationship between the parties (Brodsky v Stadlen,
138 AD2d 662, 663). No one characteristic of a business relationship is determinative in finding
the existence of a partnership-in-fact (Id.). Factors to be considered by the court include
the sharing of profits and losses, the ownership of partnership assets, joint management and
control, joint liability to creditors, the intention of the parties, compensation, the contribution of
capital, and loans to the organization (Id.).
Profits and
Losses
The plaintiff contends that he and Towler agreed to be 50/50
partners in any acquisition of Avery and Pinnacle and to share the profits and losses equally.
However, the proposed employment agreement that Magida drafted, as amended, provided for
Towler to receive only 5% of the profits, and it contained no provision for the sharing of losses.
An employer-employee relationship providing for the division of profits will not give rise to a
fiduciary relationship (in this case, a partnership) absent an agreement to also share losses
(Vitale v Steinberg, 307 AD2d 107, 108 [and cases cited therein]). An agreement that an
employee shall share in the profits of the business as entire or partial compensation for her
services is a contract of mere hiring, providing for compensation in a particular manner in order
to induce greater energy and faithfulness on the part of the employee (Id. at 109-110).
The computation of profits necessarily entails the addition of income and the subtraction of
expenditures (Id. at 109). When an employee is not required to make good on negative
amounts, losses are shared in only the broadest sense (Id.). Such an expansive
interpretation of losses renders meaningless the distinction between "sharing profits" and
"sharing losses," and no trust or fiduciary relation is created (Id. at 109-110).
Accordingly, this factor weighs in favor of the defendants.
Ownership of Partnership Assets
The record reflects that the purported partnership never acquired any assets. While the
plaintiff and Towler sought to acquire Avery's assets and Pinnacle's stock, which were owned by
the Dobelles, the acquisition was never completed. The plaintiff and Towler never even had a
contractual right to acquire Avery's assets and Pinnacle's stock. None of the letters of intent
contained a binding commitment by the Dobelles to sell them to the plaintiff and Towler, and all
three letters contemplated the preparation and execution of a more formal and more definitive
agreement. Accordingly, this factor weighs in favor of the defendants.
Joint Management and Control
There is evidence in the record that the plaintiff and Towler worked on various aspects of the
proposed acquisition together and that the plaintiff even participated in the management of Avery
and Pinnacle, including hiring personnel and taking charge of research and development, among
other things. Accordingly, this factor weighs in favor of the plaintiff. 
Joint Liability to Creditors and Loans to the Organization
The record reflects that Vincent Trapani, a friend and client of the plaintiff, agreed to finance
the acquisition of Avery with an interest-free loan in the amount of $500,000. Trapani testified
that the plaintiff first approached him about borrowing the money in May 2015. Trapani testified
that he met Towler only once and that, as far as he knew, the plaintiff and Towler were partners.
He also testified that he agreed to make the loan based on his friendship with the plaintiff and not
based on any partnership with Towler. No loan agreement or promissory note was ever executed,
and there [*4]is no evidence in the record that Towler agreed to
be jointly liable with the plaintiff on the loan. On June 11, 2015, after Towler had backed out of
the deal for the third time, Trapani wrote a check in the amount of $500,000 to the plaintiff
personally.[FN4]
 The court finds that, under these circumstances, there were no loans to the alleged partnership,
nor was there any joint liability to creditors. Accordingly, these factors weigh in favor of the
defendants.
Contribution of Capital
The record does not reflect any contributions of capital to the alleged partnership by either
the plaintiff or Towler. Accordingly, this factor weighs in favor of the defendants. 
Compensation
The record reflects that the plaintiff received compensation from Avery for work that he
contends was performed as a de facto officer thereof. The defendants contend that it was for
work the plaintiff performed in connection with his own due diligence. Towler also received
compensation for her services an employee of Avery. While the parties dispute why
compensation was paid to the plaintiff, they do not dispute that it was paid by Avery and not by
the purported partnership.
A partnership is an association of two or more persons to carry on as co-owners of a business
for profit (Partnership Law § 10 [1]). The purpose of the purported partnership
between the plaintiff and Towler was not to carry on a business for profit, but to acquire a
profit-making business. It, therefore, did not generate any profits from which to pay either the
plaintiff or Towler. Both were paid by Avery, the business that the plaintiff and Towler sought to
acquire. In the absence of any compensation from the alleged partnership itself, the court finds
that this factor weighs in favor of the defendants. 
Intention of the Parties
While the plaintiff and Towler expressed an intent to form an entity to acquire Avery and
Pinnacle at some time in the future, they never came to a meeting of the minds on the issue. All
three letters of intent clearly indicated that, except for certain specified provisions, they were not
legally binding and contemplated the preparation and execution of a more definitive agreement.
The third letter of intent is the only one in the record that was signed by all of the parties.
Contrary to the plaintiff's contentions, it was executed by the plaintiff and Towler in their
individual capacities. Martin Dobelle, on the other hand, executed it in both his individual and
corporate capacities. Nothing therein, or in the other two letters of intent, indicated that the
plaintiff and Towler were already partners. Two of the three letters referred to an entity to be
formed by them, indicating that no such entity had yet been formed. Moreover, no certificate of
doing business as partners was filed in connection with the purported partnership, as required
(see, General Business Law § 130 [1] [a]). 
The plaintiff contends that he and Towler held themselves out as and were considered
partners by Avery personnel and employees, Magida, Trapani, and others with whom they
interacted. The plaintiff relies heavily on the fact that he and Towler jointly retained counsel to
represent them in connection with the acquisition and on the following language in the retainer
agreement executed by them:
"One last point I must mention and I want you to seriously consider is that each of
you is entitled to separate counsel. While it is normal and customary for partners in a
business venture to employ the same attorney to assist them in documenting their current or
future business relationship to each other and to the entities in which they are involved . . .
(emphasis added)."
Magida went on to advise the plaintiff and Towler that
applicable ethical rules limited his ability to provide dual representation to them in certain
circumstances and that he could not continue to represent them if they no longer agreed or if they
had conflicting interests. 
The plaintiff appears to be making a partnership-by-estoppel argument. The doctrine of
partnership by estoppel provides that a person is estopped from denying the existence of a
partnership when he represents himself or consents to another representing him as a partner in an
existing partnership (Partnership Law § 27; Community Capital Bank v Fischer
& Yanowitz, 47 AD3d 667, 668). Application of the doctrine forecloses the party who
has represented himself as a partner from denying the existence of the partnership for the purpose
of avoiding the partnership's liability to injured third-parties (Partnership Law § 27;
Ads Plus Advertising, Inc. v Ault, 928 F Supp 2d 683, 693 [WDNY], citing
JLG Architectural Prods., LLC v WDF, Inc., 87 AD3d 681). Such is not the case
here. Moreover, even when parties hold themselves out as partners to others, it is not proper to
characterize them as having a de facto partnership when considering their liabilities toward each
other (The Law of Law Firms [2nd] §1:15 [October 2019 Update], citing
Rossner v Parson, 300 AD2d 102). Accordingly, this factor weighs in favor of the
defendant.
In sum, the record reflects that, although the plaintiff and Towler jointly sought to acquire
Avery and Pinnacle, their efforts did not rise to the level of a partnership. That the parties worked
together on the proposed acquisition and participated in the management of Avery and Pinnacle,
without more, is insufficient to create a partnership. 
The ultimate inquiry is whether the parties have so joined their property, interests, skills, and
risks that, for the purpose of the particular adventure, their respective contributions have become
as one and the commingled property and interests of the parties have thereby been made subject
to each of the associates on the trust and inducement that each would act for their joint benefit
(Matter of Steinbeck v Gerosa, 4 NY2d 302, 317). The present case does not reveal such
an amalgam of property interests. That the plaintiff and Towler had a community of interest and a
common economic objective is not enough (Id.). It is not enough that two parties have
agreed together to act in concert to achieve some stated economic objective (Id.). Such
an agreement, by itself, creates no [*5]more than a contractual
obligation (Id.). The fiduciary obligation arises upon the coagulation of property, profits,
or other interests that the parties can then be said to hold jointly and that are made accessible to
each other in terms of the confidential relationship that exists between joint associates
(Id. at 318).[FN5]
 
Here, the purported partnership had no commingling of property, profits, or other interests. It
had no joint assets or capital, no joint liabilities or creditors, and it did not generate any profits.
More importantly, there was no provision for the sharing of risks. As previously noted, the
proposed employment agreement, as amended, provided for Towler to receive 5% of the profits,
but did not provide for the sharing of losses. An agreement to distribute the proceeds of an
enterprise upon a percentage basis does not give rise to a partnership if the enterprise does not
represent a joinder of property, skills, and risks (Id. at 317). An indispensable element of
a partnership is a mutual promise or undertaking by the parties to share in the profits of the
business and to submit to the burden of making good the losses (Id. at 317;
Community Capital Bank v Fischer & Yanowitz, supra). An undertaking to
share in profits without submitting to the burden of making good the losses renders such an
agreement a nullity under partnership law (Chanler v Roberts, 200 AD2d 489, 491). The
absence of an agreement to share in losses is fatal to the plaintiff's claim of the existence of a
partnership agreement (Id.; Kidz Cloz, Inc. v Officially for Kids, Inc., 320 F
Supp 2d 164, 171-172 [SDNY]). Moreover, the value of services is not sufficient to satisfy the
required sharing-of-losses element (Id. at 172).
In the absence of a partnership, the plaintiff and Towler owed no fiduciary duties to each
other (Matter of Steinbeck v Gerosa, supra at 317-318). Accordingly, summary
judgment is awarded to the defendants on the first cause of action for breach of fiduciary duty
and on the second cause of action for aiding and abetting a breach of fiduciary duty.
Fraud
The plaintiff does not oppose the branch of the defendants' motion which is for summary
judgment dismissing the third and fourth causes of action for fraud and aiding and abetting a
fraud, respectively. In any event, a claim for fraud may not be based on statements that were
promissory in nature at the time they were made and that related to future conduct (Rand v
Laico, 282 AD2d 444). Accordingly, summary judgment is awarded to the defendants on the
third and fourth causes of action.
Unjust Enrichment
The fifth cause of action for unjust enrichment is based on the existence of a fiduciary
relationship between the parties. Therefore, in the absence of a fiduciary duty, there was no
unjust enrichment. Accordingly, summary judgment is awarded to the defendants on the fifth
cause of action.
Constructive Trust and Accounting
In the absence of a fiduciary relationship, the plaintiff has no cause of action for an
accounting or a constructive trust (see, Saunders v AOL Time Warner, 18 AD3d
216, 217). Accordingly, the defendants are awarded summary judgment on so much of the sixth
cause of action as seeks a constructive trust and on the seventh cause of action for an accounting.

Declaratory Judgment
The sixth cause of action also seeks a judgment declaring the plaintiff to be the owner of
100% of the equity interest in Avery and Pinnacle acquired by the defendants, as well as the
assets, revenues, profits, and distributions. When, as here, a party seeking a declaratory judgment
does not succeed, the court is required to declare the rights of the parties and not merely to deny
the declaratory relief (see, Siegel, Practice Commentaries, McKinney's Cons
Laws of NY, Book 7B, CPLR C3001:22). Accordingly, the court finds that the plaintiff has no
ownership interest in Avery or Pinnacle and that he is not entitled to any assets, revenues, profits,
or distributions therefrom. 
DATED: November 15, 2019
J. S.C.



Footnotes

Footnote 1:The plaintiff contends that he
and Towler agreed to be 50/50 partners in the venture. 

Footnote 2:The only signature on the April
29, 2014, letter of intent in the record is that of the plaintiff. It is not signed by either Towler or
the Dobelles. 
 


Footnote 3:The May 8, 2014, letter of intent
in the record is not signed by any of the parties. 

Footnote 4:The check was never cashed. 

Footnote 5:While Matter of
Steinbeck deals with a joint venture, the concepts of partnership and joint venture are closely
intertwined (Kidz Cloz, Inc. v Officially for Kids, Inc., 320 F Supp 2d 164, 171
[SDNY]). Under New York law, joint ventures are governed by the same legal rules as
partnerships because a joint venture is essentially a partnership for a limited purpose
(Scholastic, Inc. v Harris, 259 F3d 73, 84 [2nd Cir]); see also, Green v
Green, Sup Ct, Queens County, July 19, 2004, Thomas, J. [2004 WL 5641647] [and cases
cited therein]).